THE PENTHENY, LTD., Appellant
v.
GOVERNMENT OF THE VIRGIN ISLANDS
No. 15,551
United States Court of Appeals
Third Circuit
Argued April 25, 1966
Decided May 20, 1966

*See, also, 360 F.2d 786*

WARREN H. YOUNG, ESQ. (YOUNG, ISHERWOOD & MARSH),
  Christiansted, St. Croix, Virgin Islands, *for appellant*

FRANCISCO CORNEIRO, ESQ., Charlotte Amalie, St. Thomas,
  Virgin Islands, *for appellee*

Before STALEY, *Chief Judge*, and MARIS and
  McENTEE, *Circuit Judges*

MARIS, *Circuit Judge*

OPINION OF THE COURT

This is an appeal by the plaintiff, The Pentheny, Ltd.,
from a judgment entered in favor of the Government in the
District Court of the Virgin Islands upon consideration of
plaintiff's petition to review the recommendation of the
Virgin Islands Board of Tax Review (Tax Exemption
Board) and the decision of the Governor that the plaintiff
did not qualify for tax exemption and subsidies under the
industrial incentive program. These are the facts:

The plaintiff, a Virgin Islands corporation, on Septem-
ber 1, 1961 acquired a leasehold interest for 50 years in the

former Pentheny Hotel in Christiansted, St. Croix, for the purpose of reconstructing and refurbishing the building for use as a modern office building. On November 22, 1961 the plaintiff filed an application with the Virgin Islands Board of Tax Review (Tax Exemption Board) for tax exemption and subsidy benefits under the statute then in force, the Act of July 5, 1957, No. 224, Sess. L. 1957, p. 146. The application stated that plaintiff's business was "Constructing and operating a commercial building" which would have "space for Trust Company and a Bank, law offices, insurance office, medical center, tourist shops and a restaurant". The three-story building would be equipped with a commercial passenger elevator, air conditioning and a telephone switchboard. The capital then invested was $20,000.00. Plaintiff estimated that the cost of reconstruction would be approximately $150,000 and its gross annual rental receipts were estimated at $25,000.

Section 5 of the Act of July 5, 1957, No. 224, pursuant to which the plaintiff filed its application, provided:

"Each person, firm or corporation engaged in the business of constructing or operating apartment houses, housing projects, industrial or commercial buildings, within the Virgin Islands, shall be eligible for the tax or fee exemptions and the subsidies provided for in section 6 of this Act; Provided there is a demonstrable capital investment of at least One Hundred Thousand ($100,000.00) Dollars; provided further that application for such subsidies and exemptions shall be made not later than December 31, 1960; and it is further provided, that no subsidies or exemptions shall be granted to any person for the construction of any home or dwelling to be occupied by himself or his family." Sess. L. 1957, p. 149.

Section 6 of the Act of 1957, Sess. L. 1957, p. 150, provided for specific tax exemptions and subsidies to those qualifying under section 5, to continue for a period of 10 years. Section 9, Sess. L. 1957, p. 153, provided that the Act should be administered by the Board of Tax Review which for this purpose constituted the Tax Exemption Board.

The Board was authorized to conduct hearings, to "determine whether the proposed applicant" was "qualified under the provisions of this Act" and on the basis of its findings to "recommend to the Governor that the application be approved or disapproved". The Board was further authorized to recommend to the Governor the revocation of any tax or fee exemption or denial of any subsidy for the unexpired portion of the period upon failure of the beneficiary to comply with the provisions of the Act or the rules and regulations promulgated thereunder. Section 10, Sess. L. 1957, p. 154, provided that "Upon the recommendations of the Board" tax or fee exemptions and subsidies shall be granted by the Governor in the name of the Government of the Virgin Islands.

By the Act of May 11, 1960, No. 551, Sess. L. 1960, p. 57, the time limit for filing applications for tax or fee exemptions and the granting of subsidies under the Act of 1957 was extended to December 31, 1961.

On November 3, 1961, nineteen days before the application here involved was filed, Act No. 798 was approved to become effective January 1, 1962, Sess. L. 1961, p. 251. A new section 35b was added to title 3, V.I.C.,[1] creating the Virgin Islands Industrial Incentive Board to which were transferred all the duties previously exercised by the Virgin Islands Board of Tax Review (Tax Exemption Board) with respect to the administration of the industrial incentive program. Section 2 of the Act of 1961, amended and revised the industrial incentive program. 33 V.I.C. §§ 4001 et seq. Under the new Act, one engaged in the business of constructing or operating a commercial building was not included among those who could apply for benefits under the industrial incentive program.

On December 18, 1961 the Board held a public hearing with regard to plaintiff's application, its minutes disclosing

[1] Now 3 V.I.C. § 334a.

that plaintiff's counsel had informed the Board that professional office space was needed in St. Croix, that under the lease the plaintiff was required to invest a minimum of $100,000 in improvements and that plans had been submitted to various contractors for bids. On December 29, 1961 the Board met in executive session, reviewed the application in the light of evidence submitted at the hearing and concluded that "this type of venture" did "not require Tax or Fee Exemption or local Government Subsidy, and that without Tax Exemption this sort of operation would come about, in any event, to meet the needs of an expanding economy and progress of the Virgin Islands." The Board accordingly voted to recommend to the Governor that he deny the plaintiff's application. In a letter dated February 5, 1962 the Government Secretary as chairman of the Board transmitted its recommendation of disapproval to the Governor, who, under date of February 6, 1962, by letter informed the plaintiff of his concurrence with the findings of the Board and that the plaintiff's application for tax exemption and subsidies was disapproved. The plaintiff on March 27, 1962 filed a petition in the District Court for review of the decision. The Government answered asserting, as a defense, that the District Court lacked jurisdiction to review the action of the Governor in the exercise of his discretionary powers and that the plaintiff did not, at the time of application, have the requisite capital investment of at least $100,000. After holding a hearing and considering the matter the District Court filed findings of fact and concluded, as a matter of law, that it had jurisdiction over the subject matter pursuant to 5 V.I.C. § 1421; that the plaintiff did not qualify for tax exemption and subsidy benefits as it did not have $100,000 invested, the minimum capital investment required by the statute, and that the Board's decision was not arbitrary or arrived at by fraudulent means. On the basis of these find-

ings, judgment was entered dismissing the plaintiff's petition. This appeal by the plaintiff followed.

The question we must decide at the outset is whether, in view of the repeal on January 1, 1962 of the Act of 1957, No. 224, by the Act of 1961, No. 798, the Board of Tax Review (Tax Exemption Board) and the Governor had lost their former power to recommend and authorize, respectively, the grant of any benefits with respect to commercial buildings, such as the one involved in the plaintiff's application. The plaintiff urges that the Board reached its final decision during its executive session on December 29, 1961, while the Act of 1957, No. 224, was still in force and that accordingly the controlling law is the Act of 1957, No. 224, under which the plaintiff had applied for benefits. The Government argues, on the other hand, that the application was still pending after December 29, 1961 and that the critical date is February 6, 1962, when the Governor advised the plaintiff of the Board's recommendation and of his concurrence and disapproval of the application. We think it is clear that until midnight on December 31, 1961, when the powers of the Board of Tax Review with respect to the industrial incentive program passed to the Industrial Incentive Board created by the Act of 1961, No. 798, the recommendation, not yet having been transmitted to the Governor, was still within the control of the Board of Tax Review and subject to change by it. Final disposition of the pending application did not take place until February 6th, when the Governor acted upon the application. It was not until then that the plaintiff had an order which could be judicially reviewed.[2] The Government contends that the Governor had then lost his power to deal with the merits of the plaintiff's pending application because the Act of 1961, No. 798, which had been in force since January 1,

---

[2] The Act of November 3, 1961, No. 798, authorized judicial review by way of an appeal to the District Court from the action of the Governor. 33 V.I.C. § 4113.

1962, had wholly eliminated commercial buildings as a subject of benefits under the industrial incentive program. The question, therefore, which is now squarely posed is the effect of the Act of 1961, No. 798, upon plaintiff's pending application, which is the "more difficult question" we were not called upon to resolve in King Christian Enterprises v. Government of Virgin Islands, 1965, 5 V.I. 170, 179, 345 F.2d 633, 638.

It is well settled that an administrative agency is a tribunal of limited jurisdiction. It may exercise only the powers granted by the statute reposing power in it. Federal Trade Com. v. National Lead Co., 1957, 352 U.S. 419, 428; Civil Aeronautics Bd. v. Delta Air Lines, 1961, 367 U.S. 316, 322. Such an agency is required to act under the law as it stands when its order is entered. A change of law pending an administrative determination must be followed. Otherwise, the administrative body would be issuing orders contrary to existing legislation. Ziffrin v. United States, 1943, 318 U.S. 73, 78. Accordingly, jurisdiction, although once obtained, may be lost by the repeal of the statute which granted it, and in such a case proceedings cannot validly be continued beyond the point at which jurisdiction ceases unless the repealing statute contains a saving clause, Allen v. Grand Central Aircraft Co., 1954, 347 U.S. 535, 554, or vested rights have been acquired under the former law, Pacific M.S.S. Co. v. Joliffe, 1865, 69 U.S. (2 Wall.) 450; Memphis v. United States, 1878, 97 U.S. (7 Otto) 293; Poindexter v. Greenhow, 1885, 114 U.S. 270, 16 Am Jur 2d Constitutional Law §§ 419–429. However, the simultaneous repeal and reenactment of substantially the same statute, or part thereof, is regarded as a substitution and not a repeal. The statute, or part thereof, thus substituted is construed as a continuation of the original provisions to the extent reenacted and the jurisdiction of the agency is not disturbed as to those provisions which

were continued under the new statute. Inland Navigation Company v. Chambers, 1954, 202 Or. 339, 274 P.2d 104, 107; Bandeen v. Howard, 1957, (Ky) 299 S.W.2d 249, 254, cert. den. 355 U.S. 813; 2 Am Jur 2d Administrative Law §§ 338, 757. Compare United States v. Baker, 3 Cir. 1961, 293 F.2d 613, 617–618.

■ With these principles in mind, we turn to the statutes here involved. Section 1(e) of the Act of July 5, 1957, No. 224, declared a grant of subsidies and tax exemptions made under the Act to be in the nature of a contract or agreement between the Government of the Virgin Islands and the beneficiary. Sess. L. 1957, p. 148. The new statute, the Act of November 3, 1961, No. 798, amended generally the law relating to the industrial incentive program. It continued as entitled to benefits certain types of enterprise which had been included in the prior law, it added certain new types of enterprise, and it eliminated as the possible subject of benefits certain types of enterprise which had been included in the old law, the Act of 1957. Among the latter were constructing or operating commercial buildings, as we have seen. By section 3 the new Act "repealed all laws or parts of laws" which might be in conflict with it but specifically saved grants of tax exemptions and subsidies made under prior laws. Sess. L. 1961, p. 263. However, this saving clause did not include applications which had not been *granted* when the new Act took effect. It is clear, therefore, that the plaintiffs' pending application for subsidy and tax exemptions under the Act of 1957 with respect to its constructing or operating a commercial building was not saved by section 3 of the Act of 1961 when that Act superseded and repealed the Act of 1957 on January 1, 1962.

■■ We consider then whether the plaintiff had acquired a vested right by applying for benefits under the Act of 1957 of which it could not be deprived by the enact-

583

ment of the Act of 1961. The general principle is that the Legislature has the power to take away by statute that which has been given by statute except when to do so would amount to the impairment of a vested right. The recall of a privilege, an expectancy, a possibility, or an exemption, is not such an impairment for these do not constitute vested rights. Templeton v. Linn County, 1892, 22 Or. 313, 29 P. 795, 797; Brearley School v. Ward, 1911, 201 N.Y. 358, 94 N.E. 1001, 1006–1007; Board of Trustees v. People, 1949, 119 Colo. 301, 203 P.2d 490. This general principle was applied by the Supreme Court in Salt Company v. East Saginaw, 1872, 80 U.S. (13 Wall.) 373, to a bounty offered by a state for the purpose of encouraging an industry. In this regard, the Court said: [80 U.S. at pp. 376–377]

"Had the plaintiff in error been incorporated by a special charter, and had that charter contained the provision, that all its lands and property used in the manufacture of salt should forever, or during the continuance of its charter, be exempt from taxation, and had that charter been accepted and acted on, it would have constituted a contract. But the case before us is not of that kind. It declares, in purport and effect, that *all* corporations and individuals who shall manufacture salt in Michigan from water obtained by boring in that State, shall be exempt from taxation as to all property used for that purpose, and, after they shall have manufactured 5000 bushels of salt, they shall receive a bounty of 10 cents per bushel. That is the whole of it. As the Supreme Court of Michigan says, it is a bounty law, and nothing more; a law dictated by public policy and the general good, like a law offering a bounty of fifty cents for the killing of every wolf or other destructive animal. Such a law is not a contract except to bestow the promised bounty upon those who earn it, so long as the law remains unrepealed. There is no pledge that it shall not be repealed at any time. As long as it remains a law every inhabitant of the State, every corporation having the requisite power, is at liberty to avail himself, or itself, of its advantages, at will, by complying with its terms, and doing the things which it promises to reward, but is also at liberty, at any time, to abandon such a course. There is no obligation on any person to comply with the conditions of the law. It is a matter purely volun-

tary; and, as it is purely voluntary on the one part, so it is purely voluntary on the other part; that is, on the part of the legislature, to continue, or not to continue, the law."

In Wisconsin & M. R. Co. v. Powers, 1903, 191 U.S. 379, the Supreme Court reaffirmed the distinction it had made in Salt Company v. East Saginaw between an exemption from taxation contained in a special charter and an exemption offered as general encouragement to all persons to engage in a certain class of enterprise. The court stated that the latter was addressed to no one in particular and constituted a mere announcement of policy, not a contract, and was therefore subject to repeal at any time, [191 U.S. at p. 386] "a circumstance to take into account in determining whether the state has purported to bind itself irrevocably or merely has used words of prophecy, encouragement, or bounty, holding out a hope but not amounting to a covenant." See, also, Bruner v. United States, 1952, 343 U.S. 112, and Socony-Vacuum Oil Co. v. Mount Holly Tp., 1947, 135 N.J.L. 112, 51 A.2d 19. This principle rules the present case. The Act of 1957 held forth a possibility of tax exemption and industrial subsidy benefits but the plaintiff did not acquire any vested right thereto by merely applying for such benefits. We conclude that since the Governor had no power after January 1, 1962, to grant the plaintiff's application for tax exemption and subsidy for its enterprise his action in disapproving the application was correct and, indeed, the only action which he could lawfully have taken.

Since the action of the District Court in dismissing the plaintiff's petition for review was correct, for the reasons stated above, we need not and do not consider the other grounds upon which the District Court placed its decision. See Vitex Manufacturing Co. v. Government of Virgin Islands, 3 Cir. 1965, 5 V.I. 429, 351 F.2d 313, 316 footnote 3.

The judgment of the District Court will be affirmed.