384 F.2d 569
 VIRGO CORPORATION
v.
Ralph M. PAIEWONSKY, Governor, Morris F. deCastro, Director
of the Budget andthe Government of the Virgin
Islands, Appellants.
MASTER TIME COMPANY, Ltd.
v.
Percy DeJONGH, as Commissioner of the Department of Finance
of the Governmentof the Virgin Islands, Appellant.
VIRGO CORPORATION
v.
Ralph M. PAIEWONSKY, Governor, Morris F. deCastro,
Secretary, Governor'sCommittee on the Virgin Islands Watch
Industry, Member, Virgin IslandsIndustrial Incentive Board,
and Director of the Budget, Albert Prendergast,Member,
Governor'sCommittee on the Virgin Islands Watch Industry,
Chairman, Virgin IslandsIndustrial Incentive Board, and
Commissioner of Commerce; Percy deJongh,Commissioner of the
Department of Finance; Ruben Wheatley, Member, VirginIslands
Industrial IncentiveBoard and Director of Tax Division of
Department of Finance; Mahlen Lindquist,Member, Virgin
Islands Industrial Incentive Board; Adolph Potter,
Member,Virgin Islands Industrial Incentive Board; Joseph
Alexander, Member, VirginIslands IndustrialIncentive Board;
Percy Gardine, Member, Virgin Islands Industrial
IncentiveBoard; the Government of the Virgin Islands, and
Atlantic Time ProductsCorporation, Appellants.
 Nos. 16116, 16133, 16374.
 United States Court of Appeals Third Circuit.
 Argued Feb. 3, 1967 at Christiansted.
Decided Sept. 29, 1967, Rehearing Denied Nov. 7, 1967.
 
 Francisco Corneiro, Atty. Gen., Bruce MacGibbon, Asst. Atty. Gen., Charlotte Amalie, V.I., for Paiewonsky, de Jongh and others.
 William Simon, Washington, D.C. (J. Coleman Bean, Howrey, Simon, Baker & Murchison, Washington, D.C., Russell B. Johnson, Christiansted, St. Croix, V.I. on the brief), for Virgo Corp.
 Ronald H. Tonkin, Christiansted, St. Croix, V.I. (Young & Isherwood, Christiansted, St. Croix, V.I., on the brief) for Master Time Co.
 Before STALEY, Chief Judge, and MARIS and FREEDMAN, Circuit Judges.
 OPINION OF THE COURT
 MARIS, Circuit Judge.
 
 
 1
 These are appeals by the defendants from judgments entered against them in the District Court of the Virgin Islands. The appeals at our docket Nos. 16116, 16133 and 16374 involve the validity of the Watch Production Act of 1965, as originally enacted and as amended, 33 V.I.C. 511-518, which, inter alia, imposed taxes on the production of watches in the Virgin Islands and also involve the validity of the Governor's action in allocating quotas to watch manufacturers under the Act. The appeal at our docket No. 16374 raises, also, the question whether the Governor acted arbitrarily in denying the plaintiff Virgo Corporation tax exemption and subsidy benefits under the Virgin Islands industrial incentive program, 33 V.I.C. 4001 et seq.
 
 
 2
 Virgo Corporation, a Virgin Islands corporation engaged in the business of manufacturing and selling watches, filed a complaint in the district court, at Civil Docket No. 165-1965, Division of St. Croix, against the Government of the Virgin Islands, its Governor, and certain of its other officers, and Atlantic Time Products Corporation. The complaint set out two separate claims for relief. The first was for a determination that the Governor had acted arbitrarily in making an allocation to Atlantic Time Products Corporation, a newly established watch manufacturer, from the reserve quota of 300,000 units established under the Watch Production Act while denying Virgo an allocation of 45,000 additional watches from the reserve quota to relieve it from severe financial hardship. Virgo sought a judgment declaring that the Governor's allocation of 240,000 units to Atlantic Time was invalid and that Virgo was entitled to the allocation of the additional 45,000 units which it had requested. In the alternative, Virgo asked that the entire watch production program and the taxes imposed by the Watch Production Act of 1965 be declared invalid. Virgo's second claim for relief was for a judgment declaring it entitled to tax exemption and subsidy benefits under the Virgin Islands industrial incentive program, 33 V.I.C. 4001 et seq. The district court, after hearing, filed its opinion holding the Watch Production Act of 1965 to be invalid on the ground that it imposed a new export duty in violation of section 36 of the Organic Act of 1936, 49 Stat. 1816-1817. In respect to count two of the complaint, the court concluded that the case should be remanded to the Virgin Islands Industrial Incentive Board with directions that recommendations which the Board deemed proper should be made to the Governor within 30 days, that the Governor should act thereon within a reasonable time thereafter; and that if no action was taken within the time prescribed, Virgo could seek an order compelling the defendants to grant tax exemption and subsidy benefits to it. 251 F.Supp. 279, 5 V.I. 342. The court entered an order pursuant to its opinion on March 16, 1966 from which the defendant appealed to this court at our docket No. 15894. That appeal was, however, dismissed by this court as premature since the Industrial Incentive Board had not yet acted and a final decision on all the claims for relief had accordingly not yet been rendered.
 
 
 3
 By the Watch Production Act of August 30, 1965,[1] the Legislature sought to discourage through taxation the production of watches[2] destined for ultimate shipment to the United States in amounts in excess of one-ninth of the annual consumption of watches in the United States. For the six months period from October 1, 1965 to March 31, 1966, the Governor of the Virgin Islands was authorized by the Act to assign to watch manufacturers in the Virgin Islands production quotas totaling 1,800,000 units. A tax of $2.50 per watch was imposed on all watches produced in the Virgin Islands upon which tax a credit of $2.47 was to be allowed in the case of all watches manufactured within the quota allocated and watches not destined for the United States. The Governor was authorized to allocate 1,500,000 of the total quota of 1,800,000 units to Virgin Islands manufacturers in accordance with a formula set out in the Act. The remaining 300,000 units were to be reserved to relieve severe financial hardship, and to permit allocation to new manufacturers. The Watch Production Act of 1965 was amended by the Act of March 22, 1966.[3] Under the Act, as amended, the tax of $2.50 per watch was imposed upon all watches produced in the Virgin Islands in excess of the quotas to be allocated by the Governor for manufacture by Virgin Islands manufacturers, which were to aggregate one-ninth of the total annual consumption of watches within the customs area of the United States. Watches manufactured within these quotas were to be taxed at 3 cents per watch only.
 
 
 4
 After the passage of the Act of 1966 Virgo brought a second suit in the district court against the Government of the Virgin Islands, its Governor, and the Director of the Budget, at Civil Docket No. 37-1966, Division of St. Croix, for a judgment declaring the amended Act invalid in that it violated section 36 of the Organic Act of 1936 and section 28(d) of the Revised Organic Act of 1954. The district court held that the statute, as amended, continued the export duty in violation of section 36 of the Organic Act of 1936. 254 F.Supp. 405, 5 V.I. 359. Judgment was entered accordingly in favor of Virgo on June 3, 1966 and an appeal by the defendants at our docket No. 16116 followed.
 
 
 5
 In compliance with the district court's order of March 16, 1966, the Virgin Islands Industrial Incentive Board held a hearing and recommended to the Governor that partial tax exemption be granted to Virgo. This recommendation the Governor disapproved, however, and he denied Virgo's application for benefits under the industrial incentive program. Virgo then moved in the district court for an order to compel the defendants to grant it the benefits it had applied for. The district court held that it was the legislative intent that tax exemption and subsidies be made available to Virgo if it complied with the requirements of the statute and that after such compliance no discretionary power remained in the Governor to deny it benefits under the program. 259 F.Supp. 26, 5 V.I. 417. Accordingly, on November 7, 1966 the court entered an order directing the Governor to issue a certificate granting Virgo the same tax exemptions and subsidy benefits which had been granted to four other watch companies. The defendants thereupon took an appeal at our docket No. 16374 from the orders of March 16, 1966 and November 7, 1966.
 
 
 6
 Master Time Company, Ltd., a Virgin Islands corporation engaged in the manufacture and sale of watches, brought suit against the Commissioner of the Department of Finance of the Government of the Virgin Islands, at Civil Docket No. 142-- 1965, Division of St. Croix, for a judgment declaring the Watch Production Act invalid as imposing a prohibited export duty upon goods coming into the United States. On the basis of its conclusions in the actions brought by Virgo, the district court entered judgment in this action in favor of Master Time. 255 F.Supp. 927, 5 V.I. 388. The defendant then took the appeal at our docket No. 16133.
 
 
 7
 The three appeals now before us, insofar as they relate to the Watch Production Act, raise similar questions. They were consolidated for argument and will be considered together in this opinion. The issues which they raise are (1) whether the Watch Production Act, as originally enacted or as amended, is invalid as imposing an export tax on watches shipped to the United States in excess of the production quotas established under the Act or is otherwise invalid, or (2) if the district court erred in holding the Act invalid, whether the allocation made by the Governor from the reserve quota to Atlantic Time Products Corporation resulted from such non-statutory considerations and improper influences as to render the allocation void. The district court held, and the plaintiffs urge, that the Watch Production Act as amended by the Act of 1966 contained no changes from the original Act which were of legal significance in respect of the issues of validity involved in these appeals. We agree and accordingly will not consider separately the Act as originally enacted in 1965 and as amended in 1966.
 
 
 8
 I. Validity of the Watch Production Act.
 
 
 9
 The district court held that the Watch Production Act, both as originally enacted and as amended, was invalid because it imposed an export duty upon watches exported from the Virgin Islands to the customs area of the United States in violation of section 36 of the Organic Act of the Virgin Islands of June 22, 1936, 48 U.S.C.A. 1406i, which the court held to be still in force. That section provided as follows:
 
 
 10
 'SEC. 36. Taxes and assessments on property and incomes, internal-revenue taxes, license fees, and service fees may be imposed and collected, and royalties for franchises, privileges, and concessions granted may be collected for the purposes of the Government of the Virgin Islands as may be provided and defined by the municipal councils herein established: Provided, That all money hereafter derived from any tax levied or assessed for a special purpose shall be treated as a special fund in the treasury of the Virgin Islands and paid out for such purpose only, except when otherwise authorized by the legislative authority having jurisdiction after the purpose for which such fund was created has been accomplished. Until Congress shall otherwise provide, all laws concerning import duties and customs in the municipality of Saint Thomas and Saint John now in effect shall be in force and effect in and for the Virgin Islands: Provided, That the Secretary of the Treasury shall designate the several ports and sub-ports of entry in the Virgin Islands of the United States and shall make such rules and regulations and appoint such officers and employees as he may deem necessary for the administration of the customs laws in the Virgin Islands of the United States; and he shall fix the compensation of all such officers and employees and provide for the payment of such compensations and other expenses of the collection of duties, fees and taxes imposed under the customs laws from the receipts thereof. The export duties in effect on the date of enactment of this Act may be from time to time reduced, repealed, or restored by ordinance of the municipal counsel having jurisdiction: Provided further, That no new export duties shall be levied in the Virgin Islands except by the Congress.' 49 Stat. 1816-1817.
 
 
 11
 It will be observed that except for the authority conferred upon the Secretary of the Treasury to administer the customs laws of the Virgin Islands, section 36 of the Organic Act of 1936 dealt solely with certain specified powers of the legislative authorities, the municipal councils and the legislative assembly, which the Act created, and with certain limitations upon those powers. Thus the last sentence of the section, upon which the district court relied, dealt solely with the power of the municipal councils to reduce, repeal or restore existing export duties and by a proviso to that grant of power imposed the condition that no new export duties should be levied except by the Congress.
 
 
 12
 On July 22, 1954 the Congress enacted a Revised Organic Act for the Virgin Islands, 68 Stat. 497, 48 U.S.C.A. 1541 et seq. The Revised Organic Act declared the Virgin Islands to be an unincorporated territory, and completely reorganized its government, abolishing the two existing municipalities with their separate municipal councils and joint legislative assembly, and creating a single territorial government with a single legislature. The Act made comprehensive and complete provisions for the legislative, executive and judicial branches of the government, defining their powers and duties and imposing many specific limitations upon them. In the report of the Senate Committee on Interior and Insular Affairs upon the bill, S. 3378, 83d Congress, which became the Revised Organic Act, it is stated:
 
 
 13
 'The purpose of S. 3378 is to provide a new organic act, or basic charter of civil government, for the people of the Virgin Islands of the United States. The present act dates from 1936 and is based in no small part on the old Danish colonial system in the islands, which was evolved before the days of modern communication. Substantial changes, political and economical, have taken place in the Virgin Islands in the 18 years since the first somewhat makeshift organic legislation was put together, and under modern conditions the 1936 law is proving unnecessarily cumbersome and inefficient as well as expensive for the mainland taxpayers.
 
 
 14
 'S. 3378 would eliminate much of this wasteful duplication in governments and governmental services, thus affording the islands more efficient and more truly representative government. At the same time, it would give a greater degree of autonomy, economic as well as political, to the people of the Virgin islands.' S. Rept. 1271, 83d Cong. pp. 1, 2; 2 U.S.Code, Cong. & Admin.News, 1954, pp. 2585, 2586.
 
 
 15
 There thus appears to be a clear legislative intent that the Revised Organic Act should become a new basic charter of government for the territory to take the place of the 'somewhat makeshift' Organic Act of 1936 which had proved 'unnecessarily cumbersome and inefficient' and that the new Act should grant 'a greater degree of autonomy, economic as well as political, to the people of the Virgin Islands'. In many respects the Revised Organic Act parallels the Organic Act of 1936. But in a great many other instances the provisions of the revised Act diverge from the provisions of the former Act with respect to similar subject matter. We find no indication in the Revised Organic Act that the Congress intended any part of the Act of 1936 to remain in force after the Revised Organic Act took effect, except those provisions of the Act of 1936 which had made certain laws of the United States applicable to the Virgin Islands.[4] This saving provision, which appears in section 8(c) of the Revised Organic Act, 48 U.S.C.A. 1574(c), is the only reference in that Act to the Act of 1936.
 
 
 16
 It is, of course, clear that those provisions of the Act of 1936 which were inconsistent with provisions of the Revised Organic Act were repealed by implication by the latter Act. It is equally true, we believe, that those provisions of the old Act which dealt with and limited the powers of organs of the former municipalities, such as the municipal councils, fell with the abolition of the organs of government to which they related. There is no reason to believe that the Congress, which was intent on providing a greater degree of autonomy to the people of the territory through a newly created territorial legislature, intended to shackle that legislature with restrictions which had been placed in 1936 upon the municipal councils as the direct successors of the old Danish colonial councils but which the Congress had omitted from the revised Act. Quite the contrary was indicated by the Congress when in section 8(c) of the revised Act it provided:
 
 
 17
 '* * * That the legislature shall have power, when within its jurisdiction and not inconsistent with the other provisions of this Act, to amend, alter, modify, or repeal any local law or ordinance, public or private, civil or criminal, continued in force and effect by this Act, except as herein otherwise provided, and to enact new laws not inconsistent with any law of the United States applicable to the Virgin Islands, subject to the power of Congress to annul any such Act of the legislature.' 68 Stat. 501.
 
 
 18
 We think, moreover, that in conferring upon the people of the Virgin Islands a new and up-to-date charter of government the Congress could not have intended at the same time to impose upon them the well-nigh impossible task of sorting out those provisions of the old Act which were so inconsistent with the new Act as to be repealed by it from those provisions of the old Act which were to remain in force because they were not sufficiently inconsistent with the new law.[5] The very fact that the Act of 1954 is described in its title as 'An Act to revise the Organic Act of the Virgin Islands of the United States' and in its first section as the 'Revised Organic Act of the Virgin Islands' indicates that it was intended to supresede and take the place of the Organic Act of 1936 and not merely to amend or repeal portions of it.
 
 
 19
 It is true that the Revised Organic Act did not expressly repeal the Act of 1936. But in the light of the legislative history of the Act we do not regard this as of controlling significance. For it appears that when the bill, S. 3378, which became the Act of 1954, passed the Senate on May 17, 1954 it contained a section reading as follows:
 
 
 20
 'SEC. 34. Except to the extent necessary to implement the provisions of section 35, the Act of June 22, 1936 (49 Stat. 1807), and any other provisions of law inconsistent with this Act are hereby repealed.' 100 Cong.Rec. 6654.
 
 
 21
 When S. 3378 came before the House of Representatives on June 22, 1954, the bill was passed by the House after it had substituted in section 34 the following language:
 
 
 22
 'SEC. 34. Except to the extent necessary to implement the provisions of section 31 hereof and except with reference to the authority of the Secretary of the Treasury under section 36 of the Act of June 22, 1936 (49 Stat. 1807), said act and other provisions of law inconsistent with this act are hereby repealed.' 100 Cong.Rec. 8673.
 
 
 23
 It will thus be seen that except for three specific provisions, both Houses clearly expressed in precise language their intention to repeal the Act of 1936. Nonetheless, although except as to the three provisions referred to in the language above quoted the two Houses were in agreement on the repeal of the Act of 1936, the bill reported from the Conference committee of the two Houses which became the Revised Organic Act did not contain an express repealing section. No explanation of this omission appears in the statement of the House Conferees or anywhere else in the legislative history and it well may be that it was omitted inadvertently in the pressure of legislative business or that it was deemed unnecessary in view of the purpose of the Act and its structure as a complete revision of the organic law.
 
 
 24
 It thus seems clear that the Revised Organic Act of 1954 operated to repeal the Organic Act of 1936. But even if it be assumed that the Revised Organic Act did not have this effect there is another basis for concluding that the legislative power of the Virgin Islands Legislature is not limited by the provisions of section 36 of the Organic Act of 1936 which restricted the legislative power of the former municipal councils. When originally enacted the Revised Organic Act of 1954 described the legislative authority and power of the Virgin Islands which it vested in the newly created Legislature in section 8(a) as follows:
 
 
 25
 'SEC. 8(a). The legislative authority and power of the Virgin Islands shall extend to all subjects of local application not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands, * * *' 68 Stat. 500.
 
 
 26
 This grant of power was identical with that contained in section 19 of the Organic Act of 1936. 49 Stat. 1811. However, following the decision of the Supreme Court in Granville-Smith v. Granville-Smith, 1955, 349 U.S. 1, 75 S.Ct. 553, 99 L.Ed. 773; the Congress by the Act of August 28, 1958, Pub.L. 85-851, sec. 2, amended the foregoing language of section 8(a) to read as follows:
 
 
 27
 'The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands, * * *' 72 Stat. 1094.
 
 
 28
 The purpose of this amendment was stated in the report of the Senate committee on Interior and Insular Affairs upon the bill, H.R. 12303, which became the Act of August 28, 1958, as follows:
 
 
 29
 'Section 2 amends section 8(a) of the existing law under which Territorial legislature's power extends 'to all subjects of local application.' The amendment would make this read: 'to all rightful subjects of legislation.' In Granville-Smith v. Granville-Smith, 349 U.S. 1, 75 S.Ct. 553 (1955), the Supreme Court held that, at least with respect to persons who are not permanent residents of the islands, the phrase 'subjects of local application' has a meaning narrower than the phrase 'rightful subjects of legislation.' The latter language is used in the Organic Acts of Alaska and Hawaii.
 
 
 30
 'The committee is of the opinion that the term 'rightful subjects of legislation' is well known in the law, and its application to the legislative power of the Territory should prevent the development of a jurisdictional no man's land where neither Federal nor Territorial law can apply. Under the language of section 2 of the bill, the legislative jurisdiction of the Territory would cover the ordinary area of sovereign legislative power as limited and circumscribed by the Revised Organic Act or the laws of the United States made applicable to the Virgin Islands. The Congress retains, of course, the power to disapprove, modify, and supersede any and all acts of the Territorial legislature.' S. Rept. 2267, 85th Cong., p. 2; 3 U.S.Code, Cong. & Admin. News, 1958, p. 4335. It thus appears that the purpose of the amendment was to broaden the legislative power of the Virgin Islands to cover 'the ordinary area of sovereign legislative power' limited only by the provisions of the Revised Organic Act and laws of the United States made applicable to the Virgin Islands. By the latter phrase, of course, is meant those federal statutes applicable to the United States generally which, either by their own terms or by other legislation, are also made applicable to the Virgin Islands. There is no intimation in the amendatory Act or in the committee report that the broader legislative power granted by the amendment was to be limited by provisions of the Organic Act of 1936 which had not been carried over into the Revised Organic Act. Indeed the language used in the report indicated the contrary. It follows that the presently existing power of the Virgin Islands Legislature to deal with all rightful subjects of legislation is not limited by the provisions of section 36 of the Organic Act of 1936.
 
 
 31
 The precise question to which we address ourselves at this point is whether the limiting proviso of the final sentence of section 36 of the Organic Act of 1936 was operative in 1965 and 1966 to render invalid the enactment by the Legislature of the Watch Production Act and its amendatory Act, assuming that the tax which these Acts levied was an export duty. For the reasons which we have stated we conclude that it was not operative as a limitation upon the power of the Legislature in those years and that the district court erred in holding that it operated to invalidate the Watch Production Act of 1965 and the amendatory Act of 1966.
 
 
 32
 We think, furthermore, that the district court was wrong in regarding the tax imposed by the Watch Production Act and its amendment as an export duty. For the tax was essentially an excise tax levied on the production of watches in the Virgin Islands, a process local in nature and complete in itself. Articles do not acquire the character of exports while still in the manufacturing process and before they enter the stream of commerce. The tax on the production of watches was aimed at a matter of local concern and was imposed on the manufacture of those articles, not upon their transmission out of the Virgin Islands. The Supreme Court has defined the export process to be the act of carrying or sending abroad, as follows:
 
 
 33
 'To export means to carry or send abroad; to import means to bring into the country. Those acts begin and end at water's edge. The broader definition which appellant tenders distorts the ordinary meaning of the terms. It would lead back to every forest, mine, and factory in the land and create a zone of tax immunity never before imagined. For if the handling of the goods at the port were part of the export process, so would hauling them to or from distant points or perhaps mining them or manufacturing them. The phase of the process would make no difference so long as the goods were in fact committed to export or had arrived as imports.' Canton Railroad Co. v. Rogan, 1951, 340 U.S. 511, 515, 71 S.Ct. 447, 449, 95 L.Ed. 488.
 
 
 34
 What the Supreme Court said in Empresa Siderurgica v. Merced County, 1949, 337 U.S. 154, 156-157, 69 S.Ct. 995, 996, 93 L.Ed. 1276, is applicable here:
 
 
 35
 "* * * goods do not cease to be part of the general mass of property in the state, subject, as such, to its jurisdiction, and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation to another State, or have been started upon such transportation in a continuous route or journey.' Coe v. Town of Errol, 116 U.S. 517, 527, 6 S.Ct. 475, 29 L.Ed. 715. That test was fashioned to determine the validity under the Commerce Clause of a nondiscriminatory state tax. But as we noted in Richfield Oil Corp. v. State Board, 329 U.S. 69, 79, 67 S.Ct. 156, 91 L.Ed. 80, it is equally applicable to cases arising either under Art. I, 10, Cl. 2 (The Import-Export Clause) or under Art. I, 9, Cl. 5, which prohibits Congress from laying any tax on 'Articles exported from any State.'
 
 
 36
 'Under that test it is not enough that there is an intent to export, or a plan which contemplates exportation, or an integrated series of events which will end with it. * * * The tax immunity runs to the process of exportation and the transactions and documents embraced in it. * * * Delivery of packages to an exporting carrier for shipment abroad * * * and the delivery of oil into the hold of the ship furnished by the foreign purchaser to carry the oil abroad * * * have been held sufficient. It is the entrance of the articles into the export stream that marks the start of the process of exportation. Then there is certainty that the goods are headed for their foreign destination and will not be diverted to domestic use. Nothing less will suffice.
 
 
 37
 'So in this case it is not enough that on the tax date there was a purpose and plan to export this property. Nor is it sufficient that in due course that plan was fully executed. * * *'
 
 
 38
 This test is applicable in the cases now under review. The watches produced in the Virgin Islands when subjected to the taxes imposed under the Watch Production Act had not ceased to be part of the general property within the Territory subject to its taxation. The controlling fact is that the taxes attached while the watches were in the process of their manufacture and before their sale and possible export. It follows that the taxes imposed under the Watch Production Act were not export duties.
 
 
 39
 Both Virgo and Master Time further urge that the Watch Production Act was invalid because it violated section 28(d) of the Revised Organic Act which, as amended by section 402(a) of the Customs Simplification Act of September 1, 1954, provided:
 
 
 40
 'All articles coming into the United States from the Virgin Islands shall be subject to or exempt from duty as provided for in section 301 of the Tariff Act of 1930 and subject to internal-revenue taxes as provided for in section 7652(b) of the Internal Revenue Code of 1954.' 68 Stat. 1140.
 
 
 41
 Section 301 of the Tariff Act of 1930 as added by the Customs Simplification Act of 1954, sec. 401, 68 Stat. 1139-1140, was concerned only with the duty upon articles imported from insular possessions, including the Virgin Islands, outside the customs territory of the United States and provided that articles grown, manufactured or produced in any such possession which did not contain foreign materials to the value of more than 50% Of their total value should be exempt from duty. Section 301 was repealed by the Tariff Classification Act of 1962, 76 Stat. 72, 75, and these provisions now appear in paragraph 3(a) of the general headnotes and rules of interpretation to the Tariff Schedules of the United States published by the President, 28 F.R. 8625, 77A Stat. 11.
 
 
 42
 Paragraphs (1) and (2) of section 7652(b) of the Internal Revenue Code of 1954 provided:
 
 
 43
 '(b) Virgin Islands.--
 
 
 44
 '(1) Taxes imposed in the United States.-- Except as provided in section 5314, there shall be imposed in the United States, upon articles coming into the United States from the Virgin Islands, a tax equal to the internal revenue tax imposed in the United States upon like articles of domestic manufacture.
 
 
 45
 '(2) Exemption from tax imposed in the Virgin Islands.-- Such articles shipped from such islands to the United States shall be exempt from the payment of any tax imposed by the internal revenue laws of such islands.'
 
 
 46
 Paragraph (3) of section 7652(b) provides for the payment over to the Government of the Virgin Islands of substantial amounts, computed as therein provided, of the taxes collected by the Secretary of the Treasury under paragraph (1) on articles coming to the United States from the Virgin Islands.
 
 
 47
 It is perfectly clear that the provisions of paragraph (a) of general headnote 3 of the Tariff Schedules of the United States, concerning rates of duty on products of insular possessions, have no bearing on the present question. This is equally true, we think, of the provisions of section 7652(b) of the Internal Revenue Code. For the obvious purpose of paragraph (2) of that subsection is to insure that articles coming from the Virgin Islands to the United States which are taxed in the United States under paragraph (1) shall not also be taxed in the Virgin Islands. The purpose, in other words, was to prohibit double taxation of the same article. The use in paragraph (2) of the word 'Such' in the phrase 'Such articles shipped from such islands to the United States' makes it clear that the reference is only to those articles shipped from the Virgin Islands to the United States which are described as taxable in paragraph (1). It is not suggested that internal revenue taxes are imposed in the United States upon the domestic manufacture of watches, clocks and timing apparatus. We conclude, therefore, that the Watch Production Act is not invalid by reason of section 28(d) of the Revised Organic Act.
 
 
 48
 There can be no question as to the power of the Legislature of the Virgin Islands to impose an excise tax upon the manufacture of watches in the Territory. The power to impose taxes is part of the legislative power granted by the Revised Organic Act to the territorial legislature and it has always been recognized as a rightful subject of legislation. H. I. Hettinger & Co. v. Municipality of St. Thomas & St. John, 3 Cir. 1951, 187 F.2d 774, 2 V.I. 509; Port Construction Co. v. Government of Virgin Islands, 3 Cir. 1966, 359 F.2d 663, 667-668, 5 V.I. 549, 558-559. The plaintiffs urge, however, that this particular taxing statute was not a rightful subject of legislation because its purpose and effect were solely to curtail the shipment to the United States of watches produced in the Virgin Islands in numbers in excess of one-ninth of the total United States consumption of watches, and thereby to forestall Congressional action which might render impossible the continuance of the Virgin Islands watch industry. It is certainly true that the Legislature had this possibility in mind in enacting the statute. The record is abundantly clear as to this. Section 301 of the Tariff Act of 1930, as added in 1954, permitted articles manufactured in the Virgin Islands with foreign materials to be admitted dutyfree into the United States, provided the value of the foreign materials incorporated into the article did not exceed 50% Of the total value of the article. Under this Congressional authority an industry was started in 1959 in the Virgin Islands of assembling watches with foreign materials not exceeding 50% Of their finished value and exporting them to the United States duty-free. 4,900 watches were produced in the first year but by 1964 the Virgin Islands production had grown to 2,400,000 units, approximately 9% Of the annual watch consumption of the United States. This rapid growth in shipments of duty-free watches from the Virgin Islands came to be regarded by the watch manufacturers of the United States as a serious threat to their industry. Proposals were made in Congress of legislation to terminate the duty-free importation of watches from the Virgin Islands. This possibility greatly concerned the Virgin Islands Legislature which authorized the Governor to study the problem and prepare recommendations. It was pursuant to the Governor's recommendation, made after study by a special committee which he appointed, that the Legislature passed the Watch Production Act of 1965.
 
 
 49
 It is thus clear that one of the purposes of the Legislature in enacting the Watch Production Act was to discourage the production of watches in the Virgin Islands in quantities so large that their subsequent flooding of the United States market might bring about Congressional withdrawal of the duty-free importation privilege and the consequent destruction of the local industry by this elimination of its principal economic support. But this is not to say that the legislation was invalid as dealing with a prohibited subject. For all that the statute did in mandatory terms was to impose a tax upon the local production of watches at two rates, a low rate upon watches produced within the limited quotas fixed under the Act (and in the original Act on two other minor categories) and a high rate on watches produced in excess of these amounts. While, as we have seen, the Legislature undoubtedly hoped that the imposition of the tax would discourage manufacturers from producing for future shipment to the United States more watches than the quota amounts, it did not actually forbid such production or shipment which all manufacturers remained free to engage in if they chose to do so.
 
 
 50
 A taxing statute is not invalidated by the fact that it has a collateral purpose and is designed to have a regulatory effect which the legislature desires to achieve. In Magnano Co. v. Hamilton, 1934, 292 U.S. 40, 47, 54 S.Ct. 599, 603, 78 L.Ed. 1109, the Court said:
 
 
 51
 'From the begining of our government, the courts have sustained taxes although imposed with the collateral intent of effecting ulterior ends which, considered apart, were beyond the constitutional power of the lawmakers to realize by legislation directly addressed to their accomplishment.'
 
 
 52
 And, to the same effect, see United States v. Sanchez, 1950, 340 U.S. 42, 44, 71 S.Ct. 108, 110, 95 L.Ed. 47 in which case the Court said:
 
 
 53
 'It is beyond serious question that a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed. * * * The principle applies even though the revenue obtained is obviously negligible, * * * or the revenue purpose of the tax may be secondary, * * *.'
 
 
 54
 These principles are controlling here. The Taxes here involved were imposed upon all watches produced within the Virgin Islands by Virgin Islands manufacturers, a legitimate exercise of the taxing power of the Legislature, despite its collateral regulatory purpose and effect. We cannot say that the low tax of 3 cents on watches within the quota as contrasted with the much higher tax of $2.50 imposed on watches produced in excess of the quota was so palpably arbitrary and unreasonable as to amount to a denial of due process of law. Compare, for example, the $600 license fee imposed by the Territory of Hawaii on a person engaged in the occupation of auctioneer in the district of Honolulu with the $15 fee imposed in other taxation districts, which was upheld by the Supreme Court as not being an arbitrary classification or discriminatory as between persons engaged in the same occupation in the Territory of Hawaii. Toyota v. Territory of Hawaii, 1912, 226 U.S. 184, 33 S.Ct. 47, 57 L.Ed. 180.
 
 
 55
 Nor can we agree with the plaintiffs that the tax on the production of watches in the Virgin Islands was a burden on interstate commerce. The tax in question was imposed, as we have seen, on the production of watches within the Virgin Islands, a process essentially local in character and complete in itself. It is settled that commerce follows after manufacture and is not a part of it. United States v. E. C. Knight Co., 1895, 156 U.S. 1, 12, 15 S.Ct. 249, 39 L.Ed. 325. In other words, commerce does not begin until after manufacture is finished, and hence the commerce clause does not prevent a state from exercising exclusive control over the manufacture. Utah Power & Light Co. v. Pfost, 1932, 286 U.S. 165, 181, 52 S.Ct. 548, 76 L.Ed. 1038. Accordingly, the tax on the production of watches in the Virgin Islands was not a tax directly burdening interstate commerce, even though most or the watches taxed were destined for subsequent transportation to the mainland.
 
 
 56
 We conclude that the Watch Production Act of 1965, both as originally enacted and as amended in 1966,[6] was a rightful subject of legislation within the authority delegated by Congress to the Virgin Islands Legislature and did not violate the commerce clause of the Constitution or the dur process clause of the Revised Organic Act.
 
 
 57
 II. Validity of the Governor's Allocation of Quotas.
 
 
 58
 In its original suit in the district court at No. 165-1965, Division of St. Croix, Virgo attacked the validity of the action of the Governor in awarding to a new manufacturer, defendant Atlantic Time Products Corporation, 240,000 units out of the 300,000 units reserved by the Watch Production Act, as originally enacted, to be granted by the Governor 'to relieve against severe financial hardship, and to permit allocation to new manufacturers.' 33 V.I.C. 512. Virgo also attacked the Governor's action in refusing an additional allocation of 45,000 units to it from the reserve units to relieve it from severe financial hardship.
 
 
 59
 It appears that the Governor considered the applications of Virgo and others for hardship allocations of additional units as well as the applications of Atlantic Time and other new manufacturers for quota allocations and on September 16, 1965 entered an order denying the applications of Virgo and certain other existing manufacturers for allocations of additional units because of alleged severe financial hardship and granted the applications of Atlantic Time and certain other new manufacturers for production quotas. In his order the Governor stated that the requests of Virgo and others for hardship quotas 'shall not be considered at this time as they are all beneficiaries of regular quotas which were issued on September 9, 1965, out of the 1,500,000 units fixed by Act No. 1518 for manufacturers who have had a continuous record of production since October 1, 1964.' With respect to the quotas requested by Atlantic Time and two other new manufacturers he said: 'That the requests for quotas for new manufacturers are hereby approved in the quantities stated below for the following companies now in production based on present investment, employment, and other factors and criteria as provided by Act No. 1518:
 
 Watches Incorporated 5,000 units
 Atlantic Time Products
 Corporation 240,000 units
 
 60
 Virgiline Watch Company,
 
 
 61
 Inc. 24,000 units."
 
 
 62
 Subsequently on October 20, 1965 the Governor allotted the remaining 31,000 units of the statutory reserve to another new manufacturer Belmont Industries, Inc.
 
 
 63
 The Watch Production Act provided that in making grants out of the reserve amount the Governor should give special weight to the 'maintenance and promotion of employment' and to 'the complete assembly of watches from individual component parts and other characteristics of production contributing special value to the Virgin Islands.' The Governor was also to take into account, but was not limited to the consideration of, the following factors: investment in plant and equipment for watchmaking in the Virgin Islands, minimum quantities required for production without loss, and abnormal or unforseeable economic circumstances. 33 V.I.C. 515. It is clear that while indicating certain factors for his consideration the Act vested in the Governor a very wide discretion in the evaluation of these and all other factors in determining, in the interest of the economic stability and commercial relations of the Virgin Islands, the appropriate allocation of the reserve units. The record indicates that the Governor did consider a wide range of factors in finding that the interests of the Virgin Islands required that the entire reserve should be allotted to new manufacturers and that existing manufacturers alleging hardship did not have an equal claim to it. Under the express terms of the Act this finding is final and unreviewable except upon a conclusive showing that it was arbitrary or fraudulent. 33 V.I.C. 518. We have carefully examined the voluminous record but find nothing which would support Virgo's contention that the Governor's finding in this regard was arbitrary or fraudulent. Virgo's contention that the Governor's allocation of 240,000 units to Atlantic Time Products Corporation was invalid and that he should have allocated 45,000 units to it must accordingly be rejected.
 
 
 64
 III. Virgo's Claim for Tax Exemption and Subsidy Benefits.
 
 
 65
 In its suit in the district court at Docket No. 165-1965, Division of St. Croix, Virgo also sought a declaration that it was entitled to tax exemption and subsidy benefits under the Virgin Islands industrial incentive program, 33 V.I.C. 4001 et seq., or, in the alternative, an order directing the Virgin Islands Industrial Incentive Board and the Governor to take appropriate action on its application for tax exemption and subsidy benefits. As we have seen the court ordered the Board to consider the application and make recommendations to the Governor. The Board thereupon recommended a partial tax exemption which the Governor disapproved for the reason, stated in his letter of disapproval of September 16, 1966, 'that the corporation, as evidenced by its substantial profit return, does not require the stimulus of governmental assistance as provided for by the law.' The district court on November 7, 1966 entered the order directing the Governor to grant tax exemption and subsidy benefits which is one of the orders now before us for review. We are satisfied that the Governor acted within his discretionary power in denying Virgo's application and that the district court erred in holding to the contrary and in ordering him to grant it.
 
 
 66
 Section 4001(a) of the Industrial Incentive Act, 33 V.I.C. 4001(a), states it to be the policy of the Government of the Virgin Islands that 'tax exemption and subsidy benefits be made available for the promotion of such industrial or business activities as may be determined will promote the public interest by economic development of the Virgin Islands, and the establishment or expansion of which require the stimulus of such governmental assistance'. It was in the exercise of his judgment as to the applicability of the criterion embodied in the final clause above quoted that the Governor denied Virgo's application. The truth of his finding that Virgo did not require the financial stimulus provided by tax exemption and subsidy benefits is not challenged in this record. On the contrary Virgo's contention is that the clause in question had somehow been repealed by inference by the Act of April 1, 1964, V.I.Sess.L., p. 65, which deleted certain phrases from other sections of the Act. We find this argument wholly unconvincing.
 
 
 67
 Virgo also contends that when it made application for benefits under the industrial incentive program and made the showing required by the Act, a contractual obligation immediately arose on the part of the Government of the Virgin Islands to grant it those benefits, which obligation the district court properly enforced by its order. In support of this proposition Virgo cites our decision in Vitex Manufacturing Co. v. Government of Virgin Islands, 3 Cir. 1965, 5 V.I. 429, 351 F.2d 313. However in the Vitex case a wholly different situation was presented. There a certificate granting tax exemption and subsidy benefits had been issued to Vitex, which under the statute did become a contractual obligation of the government, and the question involved in the case was whether, the grant having been made, its subsequent revocation had been in accordance with the law.
 
 
 68
 The question involved in the present case was answered by this court in Pentheny, Ltd. v. Government of Virgin Islands, 3 Cir. 1966, 360 F.2d 786, 5 V.I. 575. In that case we had occasion to consider whether vested rights to tax exemption and subsidies were acquired by the mere application therefor. While the rights claimed in the Pentheny case arose under the Act of July 5, 1957, No. 224, V.I.Sess.L., p. 146, a predecessor of the statute here under consideration, the provisions upon which the applicant in that case relied were in terms substantially similar to the provisions in the present Act. In that case, it will be recalled, the applicant had invested substantial amounts of capital to construct an office building. During the pendency of the application a new statute, Act No. 798, V.I.Sess.L.1961, p. 251, became effective which omitted persons engaged in the business of constructing or operating commercial buildings from the category of those who could apply for benefits under the industrial incentive program. This court held that final disposition of a pending application did not take place until the Governor acted upon it, until which time the applicant did not have an order which could be judicially reviewed, and that although the Act of 1957 held forth a possibility of tax exemption and industrial subsidy benefits, the plaintiff had not acquired any vested right thereto merely by applying for them. We referred to the distinction made by the Supreme Court in Wisconsin & M.R. Co. v. Powers, 1903, 191 U.S. 379, 24 S.Ct. 107, 48 L.Ed. 229, between an exemption from taxation contained in a special charter, which would be equivalent to the order or certificate granting tax exemption and subsidies under the industrial incentive program, and an exemption offered as general encouragement to all persons to engage in a certain class of enterprise. And, we continued, 'The court stated that the latter was addressed to no one in particular and constituted a mere announcement of policy, not a contract, * * * 'a circumstance to take into account in determining whether the state has purported to bind itself irrevocably or merely has used words of prophecy, encouragement, or bounty, holding out a hope but not amounting to a covenant." 360 F.2d 786, 789-790, 791-792, 5 V.I. 575, 581-582, 585.
 
 
 69
 Under the industrial incentive program there are two separate considerations involved in granting tax exemption and subsidy benefits to newly established enterprises in the Virgin Islands. First, it must appear that the applicant has fully met the objective criteria required of applicants by the Act. But also it must appear that the applicant's business or industry will promote the public interest by economic development of the Virgin Islands and that its establishment or expansion will require the stimulus of the assistance authorized by the Act. Since the basic purpose of the industrial incentive program was to advance the economic development of the Virgin Islands, grants of public funds or property to private persons to assist in the establishment or support of an enterprise must be to the advantage of the public. Such grants are necessarily closely articulated with the purposes of the program and are not intended as mere gratuities or bounties. King Christian Enterprises v. Government of Virgin Islands, 3 Cir. 1965, 345 F.2d 633, 5 V.I. 170; Dorem Corporation v. Government of the Virgin Islands, 3 Cir. 1966, 358 F.2d 693, 5 V.I. 503; In re Hooper's Estate, 3 Cir. 1966,359 F.2d 569, 575-576, 5 V.I. 518, 528-530. It is, therefore, only if and when the Governor, upon considering the Board's recommendations, finds that both sets of criteria have been met and issues a certificate granting benefits under the program that a contractual obligation arises. It follows that the district court erred in holding that Virgo had an enforceable contract. Virgo further argues that the Governor improperly denied plaintiff's application as a result of political considerations. The short answer to this contention is that the Governor stated in writing the reasons for his action, which adequately supported it, and political considerations were not among them. We cannot look into the Governor's mental processes nor speculate as to what they were.
 
 
 70
 Finally, it is contended that the non-issuance of a certificate of tax exemption and subsidy benefits when such benefits had previously been granted to four similarly situated competitors of the plaintiff was a denial of equal protection of the laws in violation of the bill of rights contained in section 3 of the Revised Organic Act, 48 U.S.C.A. 1561. We had occasion in Port Construction Co. v. Government of Virgin Islands, 1966, 359 F.2d 663, 667-668, 5 V.I. 549, 558-559, to observe that the equal protection clause does not impose a rigid rule of equality of taxation. It does not prohibit those inequalities which may result from singling out one particular class for taxation or exemption therefrom. Only if it appears that there is no rational basis for the classification so that it is patently arbitrary may it be set aside as unconstitutionally discriminatory. Even singling out a group of taxpayers for special relief conditioned upon a showing of individual hardship is not necessarily invalid. Jefferson Constr. Overseas, Inc. v. Government of V.I., 3 Cir. 1966, 359 F.2d 668, 5 V.I. 543. Accordingly, the Government of the Virgin Islands is not bound to grant benefits under the industrial incentive program to all who apply for such benefits merely because it had earlier encouraged the establishment of other similar industries by granting such benefits to them. The expressed legislative intent in establishing the program was 'to promote the economic development of the Virgin Islands by the offering of certain incentives to the establishment or expansion of industries or businesses.' 33 V.I.C. 4001(a). But it does not follow that once such a benefit has been granted to a certain type of business or industry a procession of similar industries may follow in its train. On the contrary, the Board and the Governor are entitled to consider each applicant on his individual merits in the light of the extent to which his business or industry will promote the public interest by economic development of the Virgin Islands. 33 V.I.C. 4041, 4104. We conclude that the district court erred in setting aside the decision of the Governor denying the plaintiff the tax exemption and subsidy benefits and ordering him to grant them.
 
 
 71
 The judgments and orders appealed from will be reversed and the causes remanded with directions to dismiss the complaints.
 
 
 
 [1]
 Act of August 30, 1965, No. 1518, V.I. Sess.L.1965, p. 470 et seq.; 33 V.I.C. 511-518
 
 
 [2]
 The term 'watches' includes watches, clocks and timing apparatus
 
 
 [3]
 Act of March 22, 1966, No. 1631, V.I. Sess.L.1966, p. 98 et seq
 
 
 [4]
 There is an indication in the legislative history, as noted later in this opinion, that the House of Representatives, at least, intended that the provisions of section 36 of the 1936 Act, which authorized the Secretary of the Treasury to administer the Virgin Islands customs laws, should be saved from repeal
 
 
 [5]
 The report of the commission appointed under the authority of section 8(d) of the Revised Organic Act would not be helpful in this regard. For the task of that commission was to determine which general statutes of the United States should be applicable to the Virgin Islands as well as to the rest of the country and which should be declared inapplicable to the Virgin Islands. The commission was not concerned with statutes, such as the organic acts, which were applicable to the Virgin Islands alone
 
 
 [6]
 We note as a matter of interest, although it has no bearing on these appeals, that the Act was repealed by the Act of January 27, 1967, No. 1835, as of January 1, 1967, the effective date of the Act of Congress of November 10, 1966, P.L. 89-805, 80 Stat. 1521, which placed a limit upon the number of watches containing foreign components to be admitted from the Virgin Islands to the United States free of duty