**CHARLES W. TURNBULL, Ph.D. Governor, U.S. Virgin Islands, Plaintiff**
**v.**
**TWENTY-SIXTH LEGISLATURE OF THE VIRGIN ISLANDS, Defendant**

Civil No. 394/2006

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

January 19, 2007

CAROL THOMAS-JACOBS, ESQ., TIFFANY ROBINSON, ESQ., Assistant Attorneys General, V.I. Department of Justice, St. Thomas, U.S.V.I., *Attorneys for the Governor.*

DOUGLAS A. BRADY, ESQ., Jacobs & Brady, P.C., Christiansted, U.S.V.I., *Attorney for the Legislature.*

KENDALL, *Judge*

## MEMORANDUM AND OPINION

(January 19, 2007)

THIS MATTER is before the Court on Defendant's Motion for Reconsideration of the Order denying Defendant's Motion to Dismiss (hereinafter "Motion for Reconsideration") and Plaintiff's Motion for Summary Judgment. Upon review and consideration of the Motions, and arguments presented at the Hearing of December 13, 2006, the Motion for Reconsideration is denied and the Motion for Summary Judgment is granted based upon the reasons set forth below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Revised Organic Act of 1954, as amended, (hereinafter "R.O.A.") provides that the capital and seat of government of the Virgin Islands shall be in Charlotte Amalie, on the island of St. Thomas.[1] In October 2004, Act No. 6686, Title 4 V.I.C. § 21, established the Supreme Court

---

[1] Section 2(b) of the R.O.A., 48 U.S.C. § 1541(b).

191

of the Virgin Islands and provided that regular sessions of the Supreme Court shall be held in Charlotte Amalie, St. Thomas. In February 2005, the Legislature passed Bill No. 26-0003, now Act No. 6730, which, in section 61, amended 4 V.I.C. § 21(b)(2) and relocated all regular sessions of the Supreme Court from St. Thomas to St. Croix. On March 5, 2005, Governor Turnbull[2] vetoed Section 61 of Bill No. 26-0003 (Act No. 6730, § 61) in its entirety. The Legislature overrode the Governor's veto on May 4, 2005 and passed Act No. 6730. On December 15, 2005, the Legislature again overrode the Governor's veto and passed Section 2 of Act No. 6816, which provided funding for the establishment and construction of the Supreme Court on the island of St. Croix. The issue before this Court is whether the Legislature's acts were constitutional.[3]

Hearing on the matter was held on December 13, 2006. At the conclusion of oral arguments, this Court gave the parties deadlines in which to submit post-argument briefs. Defendant was instructed to submit its post-argument brief on or before January 15, 2007 and Plaintiff was given ten (10) days to respond thereto. On January 17, 2007, after the filing deadline had already passed, Defendant filed a Motion for an extension of time to submit its post-argument briefs. As the Court was clear in setting forth the deadlines, and Defendant was remiss in failing to timely submit its brief, or at the very least, moving for an extension of time prior to the deadline, Defendant's motion is denied and the Court will proceed to dispose of the matter without post-argument briefs.

## II. MOTION FOR RECONSIDERATION

In Defendant's "Motion to Vacate; for Reconsideration of Order of November 13, 2006; or to Amend Order to Permit Interlocutory Appeal" (hereinafter "November 13 brief"), it argues that the Court erred in denying Defendant's Motion to Dismiss because it relied upon new facts that came into existence only after the Motion to Dismiss was filed, without giving Defendant an opportunity to file a reply brief.

---

[2] On January 2, 2007, Honorable John DeJongh was sworn in as the Governor of the Virgin Islands.

[3] Section 8 of the R.O.A., 48 U.S.C. § 1574(a), provides that the Legislature's authority and power shall extend to all rightful subject[s] of legislation not inconsistent with the Revised Organic Act or the laws of the United States made applicable to the Virgin Islands.

Specifically, Defendant challenges reliance on Plaintiff's Amended Complaint, which was filed on November 2, 2006, over three weeks after the filing of Defendant's Motion to Dismiss. Plaintiff's Amended Complaint placed emphasis on the fact that the Legislature had confirmed the appointment of three Justices to the Supreme Court, making judicial intervention even more urgent. The Amended Complaint also cited case law that was not included in the Original Complaint. Defendant argues that because facts outside of the pleadings were considered, the Motion to Dismiss was effectively converted to a Motion for Summary Judgment, pursuant in Federal Rule of Civil Procedure 12(c).[4] As such, it was erroneous for the Court to apply a Rule 12 standard of review (assuming Plaintiff's allegations are true) instead of the Rule 56 standard of proof (where there is no genuine issue of material fact).

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." The party does not need leave of Court to file an amended complaint, so long as a responsive pleading has not been filed. Plaintiff filed the Original Complaint on July 28, 2006, and the Amended Complaint on November 2, 2006. Defendant filed its Motion to Dismiss on October 10, 2006, but a Motion to Dismiss is not a responsive pleading. *See, e.g., McDonald v. Hall*, 579 F.2d 120, 121 (1st Cir. 1978) ("neither a motion to dismiss nor one for summary judgment is a responsive pleading for purposes of Rule 15(a)"); *Environmental Ass'n v. DPNR*, 44 V.I. 218, 225 (2002). Defendant's first responsive pleading, the Answer to the Amended Complaint, was not filed until December 13, 2006. As such, Plaintiff's Amended Complaint was properly before this Court, and the Amended Complaint was the operative pleading when the Court considered the Motion to Dismiss. *See, e.g., King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("an amended complaint supersedes the original complaint and renders it of no legal effect"). As the only operative pleading, the facts alleged in the

---

[4] Rule 12(c) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment, and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Amended Complaint are not "outside of the pleadings," and it was proper for the Court to consider these facts in deciding Defendant's Motion to Dismiss. Consideration of such facts did not convert the Motion to Dismiss into a Rule 56 Motion for Summary Judgment.

Defendant contends that the Court ignored the applicable procedural rules by ruling on the Motion to Dismiss without allowing Defendant to reply to Plaintiff's Opposition. Defendant filed its Motion to Dismiss on October 10, 2006. Plaintiff filed its Opposition to said motion on November 6, 2006. On that same day, Defendant mailed to the Court its Notice of Intention to File Reply. (November 13 brief, p. 6). L.R. CI. 7.1, which provides the time frame for parties to respond to motions, states, "Nothing herein shall prohibit a district judge or magistrate judge from ruling without a response or reply when deemed appropriate." Contrary to Defendant's contentions, the Court has discretion to rule on matters without waiting for a party to respond. The Court was not bound by the rules to wait for Defendant's reply to Plaintiff's response before ruling on the matter.

Defendant also alleges that it was improper for the Court to raise, *sua sponte,* the Governor's standing to sue as a taxpayer of the Virgin Islands, pursuant to Title 5 V.I.C. § 80. Defendant contends that it was clear error to "grant" Plaintiff taxpayer standing when such standing was not pled in the Complaint. (November 15 brief, p. 6-7). Defendant's contentions are meritless and unsupported by case law. Courts are bound to decide standing issues, even when not raised by the parties, before turning to the merits. *Chong v. District Director, I.N.S.,* 264 F.3d 378, 383 (3d Cir. 2001). See also *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 90, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ("a court is bound to ask and answer a jurisdictional question for itself, even when not otherwise suggested"); *Steele v. Blackman,* 236 F.3d 130, 134 n.4 (3d Cir. 2001) ("we are required to raise issues of standing *sua sponte* if such issues exist"). In *Paynes v. Lee,* 377 F.2d 61, 63 (5th Cir. 1967), the Fifth Circuit reversed the District Court's dismissal for lack of jurisdiction because the district court clearly had jurisdiction, even though it was under a statute Plaintiff had not invoked. It is not only permissible, but required, for courts to consider issues of standing, and a party's failure to plead the correct basis for standing will not fatally affect the party's claim if an actual basis for standing exists.

194

Finally, Defendant alleges that by signing Act No. 6900 into law, appropriating the sum of $5,750,000 from the General Fund "for the establishment and construction of the Supreme Court of the Virgin Islands on the island of St. Croix," Governor Turnbull abrogated the adversarial position between himself and the Legislature, thereby confirming that there is no case or controversy. November 13 brief, p. 5-6. Closer inspection, however, reveals that Governor Turnbull's approval of the Bill was not acquiescence to changing the location of the Supreme Court to St. Croix. In a letter directed to the President of the Twenty-Sixth Legislature, the Honorable Lorraine L. Berry, dated November 22, 2006, Governor Turnbull makes clear that the only reason he approved Bill No. 26-0338 (which became Act No. 6900) was because he did not want to impede the establishment of the Supreme Court of the Virgin Islands. He stressed his belief that the three branches of the Territorial Government, including the newly-constructed Supreme Court, ought to be located in the capital, Charlotte Amalie.

## III. MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks Summary Judgment because he contends that there is no genuine issue of material fact regarding the unconstitutionality of Acts 6730 and 6816. Specifically, Plaintiff contends that the R.O.A. unequivocally establishes that these Acts are unconstitutional.

Defendant first asks this Court to deny Summary Judgment to enable it to conduct further discovery and investigation pursuant to Rule 56(f) of the Federal Rules of Civil Procedure into a variety of topics that would establish the existence of a genuine issue of material fact. Defendant alleges that it was unable to find the legislative history of the Revised Organic Act of 1954 and its 1984 amendments, or the legislative history of Acts No. 6730 and 6816, contentions that the Court finds incredulous. Defendant passed the latter two Acts in 2005 and 2006, and should easily be able to obtain their legislative history. Therefore, the Court is not persuaded that Defendant needs additional time to locate the legislative history of these statutes. Defendant's contention that it cannot locate the legislative history of the R.O.A. is indeed troubling, since this Congressional Act determines the constitutionality of all Legislative Acts.

In its "Motion pursuant to Rule 56(f); Response in Opposition to Plaintiff's Motion for Summary Judgment," Defendant cites a litany of

areas in which it contends that further discovery is needed. However, Defendant has failed to establish that the topics of discovery in its Rule 56(f) Motion would be relevant to the case at hand. Among other topics, Defendant contends that it must conduct further discovery regarding whether Plaintiff is a Virgin Islands taxpayer, the location of all executive branch and semi-autonomous government offices, the number of persons employed at each office, their annual budgets, alternative locations for the Supreme Court proposed by Plaintiff, the location of the Casino Control Commission, and the Governor's justification for ratifying Act 6900, which appropriated funds for the construction of the Supreme Court in St. Croix. However, these topics of discovery are either readily discoverable from public information or irrelevant to the central issue at hand, which is whether the Revised Organic Act mandates that the Supreme Court, as the head of the judicial branch of government, must be located in St. Thomas. As further explained below, the Court finds that the applicable provisions of the Revised Organic Act unambiguously control this issue and will grant Summary Judgment to Plaintiff.

## IV. DISCUSSION

### (a) Standard of Review on a Motion for Summary Judgment.

Summary Judgment may be granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a dispute is genuine if the evidence is such that a jury could return a verdict for the nonmoving party. *Ferris v. V.I. Industrial Gases, Inc.*, 23 V.I. 183 (D.V.I. 1987). Once the moving party has carried its burden, the adverse party may not simply rely upon allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

The Court cannot try issues of fact on a "Motion for Summary Judgment," and is empowered only to determine whether genuine triable

issues of material fact exist. *Macedon v. Macedon*, 19 V.I. 434, 437 (D.C. 1987). The Court should grant Summary Judgment if it can conclude that no reasonable jury could find in the non-moving party's favor on the basis of evidence in the motion and supporting pleadings, affidavits and documents. *See Matshushita*, 475 U.S. at 586.

## (b) Historical Background

### i) Revised Organic Act of 1954

The United States purchased the Virgin Islands from Denmark in 1917. 1954 U.S.C.C.A.N. 2585, 2587. From 1917 until 1931, the Virgin Islands were under the administration of the Navy, and were governed by a naval governor. *Id.* In 1931, President Herbert Hoover transferred the administrative responsibility from the Navy to the Department of the Interior, and appointed a civilian governor. *Id.*

The Organic Act, or basic charter of civil government, was created in 1936, establishing an elaborate system of civil government for the Virgin Islands. It was based in part on the old Danish colonial system in the islands. *Id.* at 2585. Even though the islands had a combined land area of 133 square miles, with a population of only 25,000 persons, there were three unicameral legislative bodies: the municipal council of the islands of St. Thomas and St. John of 7 members, the municipal council of the island of St. Croix of 9 members, and the legislative assembly, consisting of a joint session of the two municipal councils. *Id.* Each municipality enacted its own tax bills, appropriation bills, and other local laws. The Governor dealt with two governing bodies, administered duplicate departments with varying functions, and enforced dissimilar laws. *Id.* at 2603-2604. There were two separate police departments and police courts, two departments of education, health, public welfare, public works, and the like. The separate local governments of the Virgin Islands was costing the mainland taxpayers well over $300,000 a year. *Id.* at 2586.

By 1954, after 37 years under the American flag, Congress found that the Virgin Islands had not yet attained a sufficiently high level of economic independence to enable them to support an American standard of living without requiring special aid from the Federal Treasury. *Id.* at 2589. Direct appropriations were needed to meet the deficits in the operating expenses of the two municipal governments and to pay the

entire costs of the elaborate central administration. Congress found that this overlapping and duplication of work was wasteful and inefficient, as well as unnecessary. Substantial changes, political and economical, had taken place in the Virgin Islands since 1936, proving the Organic Act of 1936 unnecessarily cumbersome and inefficient. *Id.* at 2585. There was telephone and telegraph service between St. Thomas and St. Croix; commercial airplanes made regular daily flights from one island to the other; St. Thomas and St. Croix were only 20 minutes apart by air. *Id.* at 2588. Virtually all groups of the Virgin Islands favored a single, unicameral legislature, and a unification of the two expensive, duplicative local governments. *Id.* at 2591. A unicameral legislature would provide for uniform legislation and result in decreased cost and simplified administration.

The goal of Bill S.3378, 83d Congress, which became the Revised Organic Act of 1954, was to eliminate this wasteful duplication in governments and governmental services, affording the islands more efficient and more representative government. *Id.* at 2586. It would give a greater degree of autonomy, economic as well as political, to the people of the Virgin Islands.[5] The Act would bring about unification, establishing a single islands-wide legislature, and directing the Governor to reorganize the two municipal governments into a single Virgin Islands government. The adoption of single departments for the islands considered as a whole, rather than separate departments for St. Thomas and St. Croix, would substantially reduce operating costs through the consolidation and centralization of both functions and records. 1954 U.S.C.C.A.N. at 2605. It would also allow for a reduction in the number of employees necessary to carry out the departmental responsibilities.

The Revised Organic Act of 1954 declared the Virgin Islands to be an unincorporated territory of the United States, *id.* at 2592, and completely reorganized its government, abolishing the two existing municipalities and creating a single territorial government with a single legislature. The Act established the capital and seat of government of the Virgin Islands in the city of Charlotte Amalie, on the island of St. Thomas.

ii) Revised Organic Act of 1984

Prior to the 1984 amendments, R.O.A. § 21 read:

---

[5] *Virgo Corp. v. Paiewonsky*, 6 V.I. 256, 271, 384 F.2d 569, 576 (3d Cir. 1967).

The judicial power of the Virgin islands shall be vested in a court of record to be designated the 'District Court of the Virgin Islands,' and in such court or courts of inferior jurisdiction as may have been or may hereafter be established by local law. (68 Stat. 506)

In 1984, Congress amended R.O.A. § 21(a), granting the establishment of an appellate court by local law. Sections 21(b) and (c) were added in 1984, providing:

(b) The legislature of the Virgin Islands may vest in the courts of the Virgin Islands established by local law jurisdiction over all causes in the Virgin Islands over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction. Such jurisdiction shall be subject to the concurrent jurisdiction conferred on the District Court of the Virgin Islands by section 22(a) and (c) of this Act.

(c) The rules governing the practice and procedure of the courts established by local law and those prescribing the qualifications and duties of the judges and officers thereof, oaths and bonds, and the times and places of holding court shall be governed by local law or the rules promulgated by those courts.

## (c) The Revised Organic Act has the power and force of a Constitution in the Virgin Islands and must be interpreted as such.

█ At the outset, the Court must reiterate a basic premise regarding the status of the Virgin Islands. As an unincorporated territory of the United States, the Virgin Islands is governed pursuant to Congress's authority to make "all needful rules and regulations for territories" under Art. IV, s. 3 of the United States Constitution. The R.O.A. was intended to operate as a "new basic charter of government for the territory." *Brow v. Farrelly*, 994 F.2d 1027, 28 V.I. 345, 351 (3d Cir. 1993) (citing *Virgo Corp. v. Paiewonsky*, 384 F.2d 569, 576, 6 V.I. 256 (3d Cir. 1967), *cert. denied*, 390 U.S. 1041, 88 S. Ct. 1634, 20 L. Ed. 2d 303 (1968)). The R.O.A. is the equivalent of a Constitution for the territory. *See id.* at 352 (citing *Estate of Thomas Mall, Inc. v. Territorial Court of V.I.*, 923 F.2d 258, 262 n.4 (3d Cir. 1991)); *see also Government of the Virgin Islands*

*v. Rivera*, 33 F.3d 143 (3d Cir. 2003). As the territorial constitution, the R.O.A. is subject to the same principles of interpretation as the United States Constitution and, equivalently, controls the constitutionality of any territorial statute just as the federal Constitution controls the validity of any federal or state statute throughout the United States.

A constitution, by definition, is intended to "endure for ages to come, and consequently, to be adapted to the various crises of human affairs." *McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 415, 424, 4 L. Ed. 579 (1819). The words of the Constitution "have called into life a being the development of which could not have been foreseen completely by the most gifted of its begetters." *Missouri v. Holland*, 252 U.S. 416, 433, 40 S. Ct. 382, 64 L. Ed. 641, 18 Ohio L. Rep. 61. When cases arise presenting questions that could not have been foreseen by the Framers, "the Constitution has been treated as a living document adaptable to new situations." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 682, 72 S. Ct. 863, 936, 96 L. Ed. 1153, 62 Ohio Law Abs. 417 (1952) (C.J. Vinson, dissenting) (citing *United States v. Classic*, 313 U.S. 299, 315-16, 61 S. Ct. 1031, 1038, 85 L. Ed. 1368 (1941)); *see also Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 442-43, 54 S. Ct. 231, 242, 78 L. Ed. 413 (1934)). "The language of the constitution is generally extended to include new things and new conditions of the same class as those specified which were not known or contemplated when it was adopted." *Flaska v. State*, 51 N.M. 13, 177 P.2d 174 (N.M. 1947).

> "[I]n determining whether a provision of the Constitution applies to a new subject matter, it is of little significance that it is one with which the framers were not familiar. For in setting up an enduring framework of government they undertook to carry out for the indefinite future and in all the vicissitudes of the changing affairs of men, those fundamental purposes which the instrument itself discloses. Hence we read its words, not as we read legislative codes which are subject to continuous revision with the changing course of events, but as the revelation of the great purposes which were intended to be achieved by the Constitution as a continuing instrument of government." *United States v. Classic*, 313 U.S. 299, 61 S. Ct. 1031, 1038, 85 L. Ed. 1368 (1941).

These principles of interpretation are significant in light of the historical context in which Congress passed the Revised Organic Act of

1954, as amended. Although the Supreme Court did not exist at this time, Congress intended to create a more efficient, unified government in the Virgin Islands rather than duplicative administrations for such a small population. In furtherance of this goal, Congress placed the other branches of government in Charlotte Amalie and mandated that the seat of the judicial branch would also be located there. Absent an amendment, this Court, as well as the Legislature, must adhere to the words of the Revised Organic Act of 1954.

At the Hearing of December 13, 2006, the Legislature argued that the Revised Organic Act of 1954, as amended, was outdated, and that Congress meant to give the Virgin Islands greater autonomy and independence. While recent amendments to the original Revised Organic Act intended to give the territory significant authority to regulate its own affairs, the Court must utilize applicable principles of statutory interpretation. Just as the Legislature would not have the authority to pass legislation that would violate the individual's right to freedom of speech, the Legislature cannot ignore the substantive provisions of the Revised Organic Act governing the location of the Supreme Court. The constitutional issues presented in this litigation do not imply that the territory is powerless to build the Supreme Court in St. Croix. The Legislature is free to petition Congress to amend the Revised Organic Act of 1954, as amended, to give it the authority to do so. Until the Revised Organic Act is amended, though, the Courts and the Legislature are duty-bound to ensure that all legislation is consistent with the Revised Organic Act. In a statement that has served as the foundation for our judicial system, Justice John Marshall wrote for the Supreme Court that "The powers of the legislature are defined and limited ... and it is a proposition too plain to be contested that the constitution controls any legislative act repugnant to it." *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 177, 1803 WL 893, 2 L. Ed. 60, 2 L. Ed. 60 (1803). Accordingly, as the Constitution of this territory, the Revised Organic Act controls the validity of any Acts of the legislature.

**(d) In light of the Revised Organic Act's ordinary meaning and Congressional intent, the Virgin Islands Supreme Court must be located in the "seat of government," Charlotte Amalie.**

As previously stated, Section 2(b) of the Revised Organic Act states that the *"capital and seat of government* of the Virgin Islands shall be

located at the city of Charlotte Amalie, in the island of St. Thomas." *(emphasis added)*. The central issue before the Court is whether Acts 6730 and 6816 are consistent with the Revised Organic Act. Our analysis of their constitutionality will focus on the Revised Organic Act's plain language, statutory interpretation and Congressional intent.

a) *The ordinary meaning of "seat of government" refers to all three branches of government.*

Statutory interpretation must begin with the language of the statute, and "Congressional intent is presumed to be expressed through the ordinary common-sense meaning of the statute's plain language." *United States v. Whited*, 311 F.3d 259, 263-64 (3d Cir. 2002); *see also Territorial Court of Virgin Islands v. Richards*, 673 F. Supp. 152, 160, 23 V.I. 285 (D.V.I. 1987) (citing *Barnes v. Cohen*, 749 F.2d 1009, 1013 (3d Cir. 1984), *cert. denied*, 471 U.S. 1061, 105 S. Ct. 2126, 85 L. Ed. 2d 490 (1985)).

In the United States, the ordinary meaning of the word "government" includes the executive, legislative, and judicial branches. *See, e.g., Territorial Court v. Richards*, 673 F. Supp. 152, 161, 23 V.I. 285 (D.V.I. 1987) (citing BLACK'S LAW DICTIONARY 625 (5th Ed. 1979). "Seat of government" is illustratively defined as "the state capital or the town within a district or county where the principal government offices and officers are located; *e.g.* county seat." BLACK'S LAW DICTIONARY 1212 (5th Ed. 1979).

These common-sense definitions of "government and "seat of government" are supported by the result reached by courts in other jurisdictions that have dealt with the same question. *See, e.g., Thurston County v. City of Olympia*, 151 Wash. 2d 171, 173, 86 P.3d 151, 152 (2004) (Supreme Court of Washington held that the Plaintiff County was not authorized to relocate its courts and other justice facilities outside the "county seat" because Olympia was chosen as the county seat); *State ex rel. Lemon v. Langlie*, 45 Wash. 2d 82, 99-100, 273 P.2d 464, 474-75 (1954) (Interpreting the "seat of government" provision of the state constitution, the Washington Supreme Court held that it was a strictly constitutional question and required all then-known executive departments of the state and newly-created executive offices after the restriction went into effect to maintain their offices at the seat of government); *Turner v. Tucker*, 113 Tex. 434, 437-38, 258 S.W. 149,

150 (1924) (The Court rejected the Legislature's contention that its absolute authority to create courts and confer jurisdiction on them gave it unlimited discretion with respect to their location, and held that as required by the state constitution, the courts could only be established in the county seat). *Id.* at 439.

Defendant cites *Gomez v. Campell*, 75 N.M. 86, 400 P.2d 956 (1965), as authority for its proposition that the V.I. Supreme Court does not have to be located at the capital. That case, however, is not on point. In *Gomez,* the court distinguished between constitutionally created government officers and statutorily created ones. It held that constitutionally-created officers were required to maintain their offices at the capital while statutorily-created officers were not. In the same vein, Defendant contends that since the Supreme Court was created by local statute and not by the Revised Organic Act, the Court does not have to be maintained at Charlotte Amalie. This is a self-serving argument as the Revised Organic Act mandates the Supreme Court's location pursuant to the "seat of government" clause, and Acts 6730 and 6816 merely implemented legislative authority created by the Revised Organic Act. Moreover, *Gomez* dealt only with the location of lower-level executive offices rather than the location of the Supreme Court, which as the head of the judicial branch of government is an entirely different branch of government.

Thus, absent any contrary indications, it must be presumed that when Congress designated Charlotte Amalie as the "capital and seat of government of the Virgin Islands," it intended to establish the principal offices of the executive, legislative, and judicial branches there.

b) *The Revised Organic Act's statutory structure lends further support for the inescapable conclusion that the Supreme Court must be located in Charlotte Amalie.*

In support of its assertion that Acts 6730 and 6816 are constitutional, Defendant points out that the Revised Organic Act specifies that sessions of the Legislature are to be held in Charlotte Amalie,[6] and that the Governor shall maintain his official residence at Charlotte Amalie,[7] but it fails to specify the Supreme Court's exact location. Defendant argues

---

[6] R.O.A. § 7(b).
[7] R.O.A. § 11.

that Congress's silence about the Supreme Court's location indicates that local law is to determine its location, and therefore the Acts in question are constitutional.

This argument, however, fails for numerous reasons. Aside from ignoring the ordinary meaning of the phrase "seat of government," which was shown above to include all three branches of government, Defendant disregards the manner in which Congress referred to the three branches of government throughout this statute. "Where Congress includes particular language in one section of the statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally or purposely in the disparate inclusion or exclusion." *Bates v. U.S.*, 522 U.S. 23, 29-30, 118 S. Ct. 285, 289, 139 L. Ed. 2d 215 (1997) (citing *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300, 78 L. Ed. 2d 17 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

Throughout the Revised Organic Act, when Congress wanted to limit a particular provision to a particular branch of government, it did so clearly and unambiguously. In Section five (5) of the R.O.A., Congress specifically referenced the legislature; in Section eleven (11), the executive; and in Section twenty-one (21), the judiciary. Therefore, if Congress wanted to limit Section 2(b) to only the executive and legislative branches of government, it would have done so expressly. Congress's use of the phrase "government," instead of referencing a particular branch or branches of government, leads to the inescapable conclusion that Congress used the word in its ordinary usage to include all three branches. Therefore, the phrase "seat of government" in Section 2(b) of the R.O.A. must be interpreted to mean that the principal offices of all three branches of government are to be located in Charlotte Amalie in St. Thomas.

Furthermore, Defendant's contention that the Court should infer Congressional intent to confer authority on the legislature to determine the Supreme Court's location from the R.O.A.'s failure to include a clear statement regarding its specific location is undermined by Congress's failure to clearly state that the phrase "seat of government" excludes the judicial branch.

■ Congress's silence regarding the specific location of the Supreme Court is entirely consistent with its statement that the "seat of government" is to be located in Charlotte Amalie and the history of the

Revised Organic Act and Territory presented earlier in this opinion. Act 6686, establishing the Supreme Court, was not passed until 2004, so "there is little logic in arguing that the makers of the constitution excluded that which did not then exist to be excluded." *State ex rel. Lemon v. Langlie*, 45 Wash. 2d 82, 99, 273 P.2d 464 (1954). Therefore, to infer from the R.O.A.'s statutory scheme that the location of the Supreme Court was left to local law would be wholly unjustified in the face of a clear statement to the contrary in Section 2(b) of the R.O.A.

Accordingly, as the head of the judicial branch, the Supreme Court must be located at the seat of government of the Virgin Islands, *i.e.* Charlotte Amalie in St. Thomas.

c) *The Power to Create Local Courts is not Equivalent to the Power to Shift the Seat of Government.*

■ Section 21(a) of the Revised Organic Act, in a bid to grant greater autonomy to the territory, gave the Virgin Islands the authority to create lower courts and an appellate court; Congress did not, however, give the Legislature the authority to change the location of the seat of government. There is an important distinction between these two arguments. Defendant argued that since it had the authority to create the local courts, both lower and appellate, it also has the authority to decide where the courts should be located. Authority to create the local courts, however, does not translate into authority to change the seat of government for the Virgin Islands. Congress did not amend R.O.A. § 2(b), nor did it indicate anywhere that Charlotte Amalie was no longer the seat of government, or that the seat of government could be changed by the Legislature. Without a clear signal of Congress's intent to clothe the Legislature with this authority, it should not be presumed.

d) *The Practice in the Overwhelming Majority of States and Territories lends further support to this Court's conclusion regarding the unconstitutionality of these Acts.*

The decision to locate the Supreme Court of the Virgin Islands in Charlotte Amalie would also be consistent with the practice of the vast majority of American states and territories. The Legislature's attempt to direct our attention to the five states which currently have their state

Supreme Court located in a city other than the state capital is unavailing.[8] Currently, forty-five of fifty states have their Supreme Courts in the state capital. Although this statistic is not controlling in itself, it lends further credence to the proposition that Congress intended for the seat of government and capital to be located in one place, *i.e.* Charlotte Amalie in St. Thomas. The Supreme Court of other territories, such as Guam, Puerto Rico, American Samoa, North Marina Islands, and Federal States of Micronesia, are all located in the Capital.[9] We see no reason why the Virgin Islands should be an exception.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that Defendant's "Motion to Vacate; for Reconsideration of Order of November 13, 2006; or to Amend Order to Permit Interlocutory Appeal" and the "Motion to Vacate; for Reconsideration of Order of November 15, 2006; or to Amend Order to Permit Interlocutory Appeal" are hereby denied, and it is further

ORDERED, that Plaintiff's "Motion for Summary Judgment" is granted, and it is further

ORDERED, that Defendant's "Rule 56(f) Motion" is denied, and it is further

ORDERED, that Acts 6730 and 6816 are declared null and void, and it is further

ORDERED, that copies of this Order shall be served upon Assistant Attorneys General Carol Thomas Jacobs and Tiffany Robinson, Attorney Douglas A. Brady, and the Office of Legislative Counsel.

---

[8] Exh. A, Def.'s Brief Submitted Per Nov. 15, 2006 Order.
[9] *Id.*