**INDUSTRIOUS AUTO, INC., Appellant**
**v.**
**PATRICIA ROGERS, Appellee**

D.C. Civ. App. No. 2005-170
District Court of the Virgin Islands
Division of St. Thomas and St. John
February 11, 2008

JULIAN INDUSTRIOUS, St. Thomas, U.S.V.I., *Pro se, for the Appellant.*

The Appellee has not made an appearance.

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and STEELE, *Judge of the Superior Court, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(February 11, 2008)

Industrious Auto, Inc. ("Industrious Auto") appeals from a judgment of the small claims division of the Superior Court of the Virgin Islands, Division of St. Thomas and St. John (the "Superior Court") against Industrious and in favor of Patricia Rogers ("Rogers") in the amount of $2,055.18.

## I. FACTS

Rogers owns a 1996 Mazda B3000 pickup truck. Prior to June 15, 2004, Rogers began to experience difficulty reversing her truck. Rogers asked her friend, Dennis McCall ("McCall"), to take the truck to Industrious Auto to determine why it was having a problem shifting into reverse. On June 15, 2004, McCall brought the truck to Industrious Auto. Julian Industrious ("Industrious"), of Industrious Auto, diagnosed the truck as having a transmission problem, a radiator problem, and a problem with the air conditioning. Rogers was informed of the diagnosis and decided to leave the truck at Industrious Auto to have the transmission repaired.

On July 1, 2004, Rogers was informed that the transmission had been repaired and McCall picked up the truck from Industrious Auto. At the time McCall retrieved the truck from Industrious Auto, the truck was able to reverse without any problems. The invoice for the transmission repair (invoice # 26645) totaled $2,055.18, and was made out to Rogers. Rogers paid the invoice in full.

By July 2, 2004, Rogers began to experience difficulty engaging the truck into drive. Rogers reported the new problem to Industrious Auto, and was told that the truck's transmission would engage itself, or fix itself. Thereafter, the transmission problems worsened.

Rogers filed a complaint against Industrious Auto in the small claims division of the Superior Court. A trial on the matter was conducted on October 4, 2005. The trial judge engaged in the following inquiry with Industrious:

> THE COURT: Have you received a copy of the complaint filed by Miss Rogers?
>
> THE DEFENDANT: Yes, I did, Your Honor.
>
> THE COURT: Do you admit or deny owing her $2,055.18?
>
> THE DEFENDANT: Your Honor, I have never had any transactions with Miss Rogers. I've never seen her before probably a month ago. I don't know who she is.
>
> THE COURT: The question is, do you admit or deny owing her?
>
> THE DEFENDANT: I don't owe her anything, Your Honor.

(Trial Tr. 2, Oct. 4, 2005.)

Industrious testified at the trial that the problem engaging the car into drive was likely connected to the radiator problem, which he initially diagnosed on June 15, 2004. After hearing all of the evidence, the court stated:

> So, the Court does acknowledge that even as of June 15th there was evidently something that was wrong with the radiator, but a mechanic fixed the transmission, it took over $2,000 with it and when there were complaints about it, he didn't tell [Rogers] you better get the radiator fixed or do anything about telling [Rogers] that she had to do something or work on having that situation remedied because the warranty evidently was one year or less.

(*Id.* at 66-67.)

At the end of the trial, the court concluded:

> The Court finds that the problem was complained of in a timely manner. UCC requires persons to first of all try to have the person repair or cure the problem. [Rogers] tried to do it, but that met resistance by

Mr. Industrious. . . . According to the testimony of Mr. Industrious []
he wasn't going to touch it unless she paid for evidently additional
repairs.

Given all of the testimony, the Court does find that Mr. Industrious
had a duty to attempt to cure the matter when it was first brought to his
attention, that it was not working within 48 hours and he failed to do
so, and therefore, the Court finds that [Rogers] is entitled to the dam-
ages of $2,0155.18 plus the $40 court costs . . . .

(*Id.* at 68-69.)

On January 25, 2006, the Superior Court entered judgment in favor of
Rogers and against Industrious Auto for $2.0155.18 in damages and $40
in court costs, as stated at the trial on October 4, 2005.

Industrious Auto timely appealed the January 25, 2006, judgment,
raising two issues. First, whether Rogers had the right to sue Industrious
Auto even though it was McCall who signed the repair order authorizing
the transmission repairs. Second, whether the transmission repair service
performed by Industrious Auto on Roger's truck was subject to a
thirty-day warranty under title 12A, section 184 of the Virgin Islands
Code ("Section 184").

## II. JURISDICTION

This Court has jurisdiction to review final judgments and orders of the
Superior Court of the Virgin Islands. *See* Revised Organic Act of 1954
23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act
of 2005).

## III. STANDARD OF REVIEW

We review *de novo* questions of law. *Saludes v. Ramos*, 744 F.2d 992
(3d Cir. 1984). Accordingly, issues of statutory interpretation are
reviewed *de novo*. *Mapes Monde, Ltd. v. A.H. Riise Gift Shop, Inc.*, 337 F.
Supp. 2d 704, 707, 46 V.I. 297 (D.V.I. 2004); *see also Files v. ExxonMobil
Pension Plan*, 428 F.3d 478, 486 (3d Cir. 2005). Findings of fact made by
the Superior Court are not to be disturbed unless they are clearly
erroneous. *Lenhart v. Richards*, 17 V.I. 619 (3d Cir. 1980); *T-Shirt World,
Inc. v. Artland, Inc.*, 20 V.I. 147 (D.V.I. 1983).

## IV. ANALYSIS

### A. Rogers' Right to Sue Industrious Auto

Industrious Auto contends that it was McCall, not Rogers, who signed the repair order authorizing the repairs to Rogers' truck's transmission. Accordingly, Industrious Auto argues that McCall was the only consumer who could sue for unfair motor vehicle trade practices under Section 184.[1] However, there is nothing in the record to suggest that Rogers sued Industrious Auto for unfair motor vehicle trade practices under Section 184. Indeed, the record suggests that such a claim would have been procedurally inappropriate.[2] Notwithstanding the inapplicability of Section 184,[3] Rogers must have had standing to sue Industrious Auto.

To establish standing, a plaintiff must demonstrate: "(a) an actual or threatened injury (b) that was caused by the Defendant's action, (c) which injury is capable of judicial redress." *Turnbull v. Twenty-Sixth Legislature of the Virgin Islands*, 48 V.I. 190 (2007) (citations omitted); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561 (3d. Cir. 2002) (quoting *Bennett v. Spear*, 520 U.S. 154, 167, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)).[4] "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 n.1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

---

[1] Section 184 provides that the consumer must sign a repair order containing certain information prior to the commencement of requested repairs. *See* V.I. CODE ANN. tit. 12A, § 184(2) (1994).

[2] Title 12A, section 185 of the Virgin Islands Code requires the consumer to first submit her dispute regarding unfair motor vehicle repair shop services to the Department of Licensing and Consumer Affairs for review, before bringing a civil action based on such dispute. *See* 12A V.I.C. § 185 (1993). There is nothing in the record to suggest that Rogers adhered to that process. Thus, a claim based on unfair motor vehicle trade practices would have been procedurally improper.

[3] Even if Section 184 applied, the evidence suggests that McCall was simply acting as an agent of Rogers when he signed the repair order. Rogers would likely be considered to be the consumer who sent her authorized agent to sign for the requested repairs. *See, e.g., People v. Franzoni*, 347 N.Y.S.2d 910, 913-14 (N.Y. City Crim. Ct. 1973) ("Where, as here, the owner of the vehicle himself sends the insurance company to the repair shop, any suggestion that the insurance company did [n]ot have authority to contract for repairs offends common sense.").

[4] Standing to sue in the Superior Court is determined in accordance with the rules applicable to standing in federal courts. *Turnbull v. Twenty-Sixth Legislature of the Virgin Islands*, 48 V.I. 190 (2007) (citing *Dennis v. Luis*, 741 F.2d 628, 630 (3d Cir. 1984)).

■ Here, the trial court found that

> Miss Rogers is the one that paid over $2,000, so obviously, she would have had an interest in what was wrong with the vehicle and she had to pay this $2,000 bill partly evidently cash and partly with a credit card, and so, obviously, she was the person that would have most concerns about her vehicle that was not operating in less than 48 hours after she shelled out two thousand some odd dollars.
>
> . . .
>
> [McCall] was the person that brought the car, pick[ed] up the car, but the invoice and everything was made in Miss Rogers' name and was paid by Miss Rogers . . . .

(Trial Tr. 65, 67, Oct. 4, 2005.) Clearly, Rogers, as the owner of the truck, suffered injury in fact in that the problems with her truck's transmission only worsened after she paid Industrious Auto $2,055.18 to repair the transmission. The Superior Court also found that Rogers' injury was caused by Industrious' failure to alert her of the problem in a timely manner, and Industrious Auto has not challenged that finding. Finally, Rogers' injury could be redressed by the entry of a judgment in her favor in the amount of money Rogers paid to Industrious Auto for the faulty repair services.

Accordingly, Rogers had standing to sue Industrious Auto, regardless of whether she personally signed the repair order. *See, e.g., Williams v. Blyden*, 45 V.I. 90, 98-99 (2002) (holding that the plaintiff had standing to sue); *see also Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc.*, 317 S.W.2d 841 (Mo. App. 1958) (holding that privity of contract between the plaintiff and the defendant, whose allegedly negligent repairing of a tractor caused damage to a trailer owned by the plaintiff, was not a requisite to recovery).

**B. Section 184**

Industrious Auto also argues that Section 184 sets forth a thirty-day warranty period for automobile repairs not performed in a skilled and workmanlike manner.

The relevant portion of Section 184 provides:

> The following shall be considered unfair trade practice when operating a motor vehicle repair shop:

(7) The dealer or motor vehicle repair shop fails to guarantee and remedy promptly, at no charge to the consumer, any repair or maintenance service authorized on a standard repair order which was not performed in a skilled and workmanlike manner; provided, however, that the consumer complains or brings the disrepair to the attention of the repair shop within 30 days.

12A V.I.C. § 184(7).[5]

■■■ The plain language of Section 184 reveals that it does not impose a thirty-day time limit on warranties for motor vehicle repair shop services. *See id.* Rather, Section 184 clearly makes any warranty contingent upon the consumer reporting the disrepair within thirty days. *See id.* at § 184(7). Therefore, to impose a thirty-day time limit on warranties for automobile repair shop services not performed in a skilled and workmanlike manner would be to re-write the statute—a role properly left to the legislature, not the Court. *See E.I. DuPont De Nemours and Co. v. United States*, 460 F.3d 515, 526 n. 16 (3d Cir. 2006) (noting that when a statute's terms are unambiguous, the inquiry should be restricted to the plain meaning of the text); *see also United States v. Parise*, 159 F.3d 790, 799 (3d Cir. 1998) (cautioning that courts must "refrain from reading additional provisions into a statute when its meaning is clear").

■■ Moreover, there is no indication from the record that the trial court found that Industrious Auto engaged in unfair trade practices under Section 184, or that the ruling below was in any way based on that

---

[5]    The term "motor vehicle" is defined in title 12A, section 180(j) of the Virgin Islands Code as "any self propelled vehicle primarily designed for transportation of persons or property on highways and roads. This does not include vehicles run only upon tracks, off road vehicles, trucks over 10,000 lbs. gross vehicle weight, or the live-in facilities of recreational vehicles." 12A V.I.C. § 180(j) (1994). The term "repair shop" is defined as "a person or company who, for compensation, offers to the public, and engages in the business of, diagnosing or repairing malfunctions of, or damage to, motor vehicles, or who performs maintenance services on motor vehicles." *Id.* at § 180(p).

Additionally, under title 12A, section 184(9), it is considered an unfair trade practice if "[t]he dealer or motor vehicle repair shop charges a consumer for repairs which have not actually been performed." *Id.* at § 184(9).

statute.[6] However, even if the liability of Industrious Auto had been based on Section 184, the trial court found that Rogers complained of the disrepair within forty-eight hours from when she received the truck—well within the thirty-day time period provided by the statute.[7]

## V. CONCLUSION

For the reasons stated above, the Court will affirm the January 25, 2006, judgment in favor of Rogers and against Industrious Auto. An appropriate judgment follows.

---

[6]   In fact, a ruling based on unfair motor vehicle trade practices would have been inappropriate, as there is no evidence that Rogers followed the requisite procedure for filing such claims. *See* 12A V.I.C. § 185 (1993); *see also* note 2, *supra.*

[7]   During the trial, Industrious Auto claimed that Rogers failed to report the disrepair until shortly before the trial. The trial judge, however, explicitly rejected that contention and found that Rogers reported the new transmission problem within forty-eight hours from when the transmission was supposedly repaired. Industrious Auto has not argued, nor is there anything in the record to indicate, that such finding was clearly erroneous.